JUDGE PRYOR
delivered the opinion of the court.
The appellee Cornelia W. Newcomb, by her next friend, J. L. Danforth, instituted the present action in equity in the Louisville Chancery Court on the 2d of March, in the year 1875, in which it is alleged that she is the widow of Horatio D. Newcomb, deceased, and as such entitled to dower in the realty owned by him at his death, and her distributable share of his personal estate; that her husband left a large and valuable estate, and a last will and testament by which he made various devises to his children and to others therein named, all of whom, together with the executors, are made defendants to the action. It is further alleged that she is a person of unsound mind, but has never been adjudged a lunatic, and has no committee. By the provisions of the will the *559 appellee has secured to her an annuity of $2,500 during her natural life; this she declines to accept, and through her next friend elects to renounce the provisions of the will made for her benefit, and asks the chancellor, inasmuch as she is disabled, from mental infirmity, from complying with the statute in making a written renunciation, to make it for her. She asks for a judgment allotting dower and her interest in the personalty.
The husband died in August, 1874. Prior to his death, on the 24th of April, 1871, on his petition filed in the Louisville Chancery Court, a decree was entered divorcing him from the present appellee, Cornelia W. Newcomb, and restoring him to all the rights and privileges of an unmarried man. Shortly after this divorce he married Mary C. Smith, and had by her two children. He devised to these two children and their mother about four hundred thousand dollars, and also made them residuary devisees with his son, H. Victor Newcomb, the only surviving child of the first marriage, to whom, the will recites, he had previously advanced four hundred thousand dollars. The construction of the will, and the rights of the parties under it, is not, however, involved in this litigation. Mary C. Newcomb and her two children are parties (appellants) to this record.
The appellants pleaded the record of the proceedings by which the divorce was obtained in the year 1871, as a bar to appellee’s recovery, and upon that record arises the principal question in this controversy. The court below granted relief by giving to the appellee her dower and distributive share of the personal estate. Prom the record in the divorce case, as well as in the present action, it appears that the appellee and Horatio D. Newcomb were married in the city of Louisville on the 23d of June, 1838, and lived together as husband and wife until the year 1852, when the appellee became a lunatic, and was taken by her husband to an asylum for the *560 insane located in Sommerville, Massachusetts, where she has continuously remained, and was there living at the institution of this action.
There was never any inquest of lunacy held, or any judicial finding of that fact; but it clearly appears from the evidence that she is a confirmed lunatic, and that such has been her mental condition since she was placed in the asylum. The husband continued to reside in Louisville until his death in 1874. The decree divorcing the parties was rendered under the act of 1865 providing, “ That the courts of chancery jurisdiction may decree a divorce, to both husband and wife, as an additional cause to those named in said section (chap. 47, art. 3, sec. 1. Rev. Stat.), for lunacy and unsound mind of confirmed and incurable character, and not less than three years’ continuance, to be established by the testimony of those skilled in mental maladies, and other proof; and upon granting the divorce, shall protect the property interest of the person of unsound mind, .... and in case of a wife, a provision shall be made for her out of the husband’s means.” Section 2 of the act makes it the duty of the court to appoint a guardian ad litem for the lunatic, who shall be a member of the bar and skilled in the law, and who shall be sworn to faithfully and honestly discharge his duties. Section 3 provides, that no divorce shall be granted under this act except in eases where the lunacy or unsoundness of mind was the result of intemperance or hereditary taint of insanity, which was concealed from the party at the time of the marriage, nor until the questions of fact shall be tried by a jury; nor shall the divorce be granted until and unless the chancellor shall enter on the record that he has heard all the testimony, and that in his opinion the judgment is sustained by the evidence.
By act of January, 26, 1871, amending the act of I860, it was provided that the court, in its discretion, might dispense with the jury.
*561 Under tbe provisions of these several enactments, the appellee was proceeded against by her husband as a non-resident or absent defendant, and a warning order entered requiring her to appear and answer the complaint within sixty days. An attorney or guardian ad litem was appointed to defend for her, and the chancellor, upon the facts, rendered the judgment without the intervention of a jury.
Before a warning order could be made by the clerk under the Code of Practice in force at the institution of the action, an affidavit was required to be made by the plaintiff and filed in the clerk’s office, setting forth the grounds, or some of them, designated by the Code authorizing proceedings by constructive service. Among those grounds is, that the defendant is “Anon-resident of this state;” or, “Has been absent from this state four months.” (Civil Code, sec. 88.) The court may also make the warning order upon the requisite facts being shown by the affidavit of another than the plaintiff or his attorney. (Civil Code, section 89.) The warning order was entered in this case in court, and the appellee proceeded against either as a non-resident or absent defendant. The affidavit showing the facts upon which the warning order was made, does not appear in the record of the action for a divorce, nor does it appear that any such affidavit was made. Counsel for the appellee now insist, as they did in the court below, that the decree of divorce is void for the following reasons: 1. There was no affidavit of the non-residence or statutory absence of the appellee; 2. The husband having placed his wife in the asylum, and being under his control and subject to his will, she was neither a non-resident, nor absent in the sense of the statute, so as to authorize a constructive service; that the domicil and residence of the husband was the domicil and residence of the wife, and actual service was necessary; 3. The appellee was entitled to have the question of her lunacy passed on by a jury. The court below, in the opinion delivered,, *562 assigned as one of the grounds for determining the judgment void, the absence from the record of the affidavit required by the Code, showing the appellee to have been a non-resident or absent from the state four months. That neither the clerk or the court had the authority to make the warning order without such an affidavit. There can be no question as to the necessity for such an affidavit before the entry of an order warning the defendant to appear and answer.
The important inquiry arising on the first objection is not as to the authority of the court to enter the warning order, which is the constructive summons, but as the warning order has been entered, and the judgment rendered by a court of general jurisdiction, must it not be presumed that all the preliminary steps had been taken which were necessary to make the warning order valid? That the court had jurisdiction of the subject-matter is not controverted, and having warned the appellee to appear, can it be presumed or adjudged in a collateral proceeding like this, that the warning was given without regard to the provisions of the Code on that subject? The general doctrine established upon this point, and sustained by an almost unbroken chain of adjudication, is to the effect that where the record shows the service of a summons, whether actual or constructive, it imports absolute verity; or where the judgment shows that the parties appeared, or that due notice had been given, the judgment is conclusive until reversed or vacated by some direct proceeding. The presumption is always indulged in favor of the jurisdiction of courts of general jurisdiction, and they can not be assailed in collateral proceedings, and adjudged void for the reason that the evidence of some preliminary step to be taken in the inception of the action is not found among the files of the clerk in whose office they are required to be kept. This doctrine applies to tribunals acting under the same sovereignty, public policy requiring that such judgments should be regarded as long *563 as they remain oh the record . unimpeached or unreversed. “ Being domestic judgments, they can, if erroneous, be reviewed by proceedings instituted for that purpose, and reversed on error or by a new trial; and if the danger is imminent, relief can be temporarily, if not finally, obtained in a court of equity. The general good clearly requires, and has therefore established the rule, that domestic judgments of courts of general jurisdiction can not be attacked collaterally.” (Freeman on Judgments, 171, and authorities cited.)
But few adjudications are to be found opposed to this wise and just rule, and it may be regarded as the well-established doctrine on the subject. (Coit v. Haven, 30 Conn.; Pratt v. Dow, 56 Maine; Yaple v. Titus, 41 Penn.; Shawhan v. Loffer, 24 Iowa; Cook v. Darling, 18 Pick.; Carpenter v. Oakland, 30 Cal.) It is needless, however, to pursue the inquiry further as to the validity of domestic judgments, the point in this case being whether the affidavit is a part of the summons, or its connection with the record so indispensable as to render the judgment void in its absence. Section 91 of the Civil Code provides, that the warning order is a constructive service. “A defendant against whom a warning order is made shall be deemed to have been constructively summoned on the thirtieth day after making the order, and the action may proceed accordingly.”
It is maintained by the appellee, that because the record is silent as to the evidence upon which the constructive service was had, the judgment rendered is a nullity; and the authority mainly relied on in support of the position is the case of Galpin v. Page (reported in 18 Wall.), where, in the application of the rule being discussed, a distinction is attempted to be drawn between the judgments of superior courts, when the persons over whom jurisdiction is claimed are within the territorial limits of the court, and cases where the judgment is against those outside of the territorial limits.
*564 After a careful consideration of that; case and the authority, as well as the reasoning upon which it is based, we can not recognize the distinction. It is a well-settled rule, so far as scarcely to be questioned, that a domestic judgment rendered by a court of general jurisdiction can not be collaterally attacked, unless the want of jurisdiction appears upon the record.
' Courts differ ,as to what facts constitute a want of jurisdiction, but nearly all concede the general doctrine. This rule is established upon grounds of public policy, as the main security to the rights of person and property, and as said by the court in the case-.of Coit v. Haven (30 Conn.): “It will not be claijned that when a court has jurisdiction, its records speak- absolute verity because it is the -record of. the court’s action. .It is necessary that confidence should be reposed, in courts of a high character, as well as in the records of such courts. '.......It is the only safe rule, to give the decisions of courts of general jurisdiction full effect so long as they remain in force, rather than to leave them open to be attacked in every way and on all occasions.” This mode of reasoning is found in nearly all the cases on the subject, and the doctrine fully recognized in the case of Galpin v. Page, when applied to domestic judgments, or rather to judgments -against parties within the territorial jurisdiction of the court. If the rule is established by reason of the public good, and to maintain confidence in the administration of justice by courts of general jurisdiction, why should it not apply to the nonresident as well as the resident? It is not denied that civil proceedings may be had by constructive service, affecting the personal and property rights of a non-resident, and there is the same necessity for protecting the property interests acquired- under such a judgment that there is when all the parties reside within the state in which the judgment is rendered. While state sovereignty is confined to its territorial limits, and one state may not give the same effect to *565 a judgment rendered in another state that it would to one pronounced by its own tribunals, still, when the validity of a judgment is questioned in a state where it was rendered, we see no reason for making an inquiry for the purpose of ascertaining whether the judgment was rendered against a resident or non-resident; in either case it is a domestic judgment, and the same presumption must be indulged as to the jurisdiction.
Since the organization of judicial tribunals within the commonwealth non-residents have been - proceeded against by publication and orders of warning, and this mode of bringing parties before the court who are non-residents, in cases affecting their rights, is the constant practice of all the courts of general jurisdiction. If the absence of an affidavit from the record as to the non-residence of the defendant is to render the judgment void, it would not only work incalculable mischief by rendering uncertain and insecure the title to all property acquired under such proceedings, but would in effect overturn the well-settled rules of practice in this state on the subject. .The non-resident, except in a judgment of divorce, may prosecute an appeal, may file his petition for a new trial, and by an express provision of the statute is allowed five years from the rendition of the judgment in which to appear, file an answer, and move for a retrial. Under the act of 1815, authorizing proceedings against unknown heirs, it was provided, that before the issuing of process ór making an order of warning (which was by publication) against such heirs, the complainant should file in the clerk’s office, with his or her bill, an affidavit that he or she did not know Hie names of such heirs.
In the case of Hynes v. Oldham (reported in 3 Mon. 266) the lessor of the plaintiff, in an action of ejectment, offered as evidence in support of his title a decree of the Grayson Circuit Court, together with a conveyance made to him by the commissioner of the lands in controversy. It was objected to *566 by the defense on the ground that the proceedings under which the decree was obtained were against the unknown heirs of "White, and Bamsey, a non-resident, and there was no affidavit annexed to the bill, as required by the statute. This court said, on the appeal in that case: “ The affidavit was expressly required by the statute, and the want of it would have been fatal on demurrer. The distinction between the legal effect of a void judgment or decree, and of one merely erroneous, is founded in good reason, etc.; but by what criterion we may distinguish the one class of decrees from the other is not so clear. It may, however, be laid down as a general rule, that wherever the court rendering the judgment has not jurisdiction, or if rendered against a person in his absence without having the warning which" the law requires, the decree or judgment will be void; but if the court has jurisdiction, and the person against whom the judgment has been rendered has appeared, or has had the warning which the law requires to authorize the judgment in his absence, the decree or judgment, however defective in other respects, will be erroneous merely, and not void for the want of an affidavit, etc."
The same principle was recognized in the case of Benningfield v. Reed (8 B. Mon. 102.) The warning order was then regarded as the summons, and by section 90 of the Code, already cited, it is expressly declared to be such. We can not perceive the distinction attempted to be made between a proceeding under the statute of 1815 and a proceeding under the Code. The remedy or character of process and service is in each case prescribed by statute. In the case of Brownfield v. Dyer (reported in 7 Bush) it appeared from the record that the order of warning made was not authorized by the Code. It was, in fact, no warning, as was clearly shown from an inspection of the record itself. The record disclosing a want of jurisdiction, it was held that the judgment was void. In the cases of Green’s heirs v. Breckinridge (4 Mon.) and *567 Blight’s heirs v. Banks (6 Mon.) the records disclosed a want of jurisdiction, and no presumption will be indulged contrary to the facts the record itself develops. The case of McLaughlin v. Hall (MS. Op.) is the only authority of this court conflicting with the views here presented. The warning order in that case was made by the clerk, a mere ministerial officer. The question was involved in a direct appeal, and while the proceeding was erroneous, we are not inclined to say that it was void for the want of an affidavit., In the case of Long v. Montgomery (6 Bush) it appeared from the record that the sheriff’s return was indorsed executed without any signature,' and-although the judgment recited that the party appeared, this court held, no doubt, from the execution of the officer’s return, that the recital was merely formal, and determined the judgment void. In the absence of any summons in the record with such a recital as that the party appeared, or was duly served, and a judgment, such a judgment would not be determined void in a collateral proceeding, and if considered as error, can be remedied only by an appeal.
In the case of Hahn v. Kelley (34 Cal.) we find this language in regard to presumptions in favor of judgments' rendered by courts of general jurisdiction: “Not universally, but frequently, we find the words ‘superior courts’ accompanied by the phrase, ‘proceeding according to the course of the common law’ What does this phrase mean? Does it operate as a limitation on the rule? Does it mean that when a superior court is proceeding according to the rules and practice of the common law its jurisdiction will be presumed, but when it is proceeding according to the rules and practice prescribed by the statute its jurisdiction will not be presumed, but must be shown? Does it mean that the same court is superior or inferior according to circumstances; that it is superior when it works according to the common law, and inferior when it works according to the statute law? If it does, what is the *568 reason upon which the distinction is founded? There is no force in the suggestion that the court is exercising a general power when obtaining jurisdiction by actual service, and a limited or special power when doing so by constructive service. The distinction is not as to the power, for the power is the same in both cases, but as to the mode of exercising it.” The reasoning for indulging a presumption in the one ease applies with like force to the other.
The proceedings of the courts of this state are not conducted according to the course of the common law, but regulated by the Code of Practice, and in regard to judgments of courts of general jurisdiction within the state, the same presumptions must be indulged in, whether the judgment or proceedings follow the common law, or are regulated by statute, unless the statute prescribes a different rule for determining the validity of the judgment. For the reasons given we can not. concur with the court below, that the absence of the affidavit from the record renders the judgment void. The presumption is, that the warning order was entered by the court as provided by the Code.
The question more difficult of solution than all others made in this case comes from the second objection taken by counsel for the appellee to the validity of the judgment of divorce. Was the appellee amenable to constructive service when confined in an asylum in a distant state by her husband, and at the time under his control? And is parol evidence admissible in this collateral proceeding to establish these facts for the purpose of avoiding the effect of the judgment? That she was in the asylum in obedience to his command, in actual confinement, without the power, or even will, to resist, at the time the warning order was entered and the judgment rendered, is an admitted fact. It must be conceded that the husband was influenced by no improper motive in placing his wife in this asylum; but on the contrary much of his time and fortune *569 was contributed in the effort to relieve his wife from her unfortunate mental condition, and when it was ascertained that she was in a state of incurable insanity, he still continued out of his abundant means to furnish every thing necessary to alleviate, as far as possible, her mental and physical suffering. Considerations of this sort, however, can not control the decision of the questions before us. The principle governing this case can not be regulated by the good or evil intent of the husband, or by the mental condition of his unfortunate wife.
Recognizing the general doctrine that judgments of courts of general jurisdiction are not the subject of an attack in a collateral proceeding, it becomes necessary to determine whether this rule, or the reasons upon which it is based, is to be applied to the case before us. The rule had its origin from .motives of public policy, sustained, as all the authorities conduce to show, by the additional reason that the party aggrieved has every opportunity offered him for redress if wrong has been committed; he may appeal, move to set aside the judgment, or for a new trial, so long as the court rendering the judgment has any control over it. He may also file his petition to review the judgment, or acpetition for a new trial. Such proceedings the policy of the law requires he shall adopt, and will not permit collateral attacks upon such judgments when they may be offered as evidence, or relied on as the final determination of the rights of the parties.
We have already adjudged, that upon the face of the record, in which the judgment for the divorce was rendered, it must be presumed, in a collateral proceeding like this, that the appellee Mrs. Newcomb had her day in court. The representatives and devisees of the husband are now relying on the judgment rendered in that action as a bar to the appellee’s recovery. Will she be allowed to show in this proceeding that the record is false and the judgment void?
*570 That ail order of warning, in certain cases, can not be made so as to render the judgment valid, although all the proceedings on the face of the record appear proper, is now well settled. In the case of Dean v. Nelson (reported in 10 Wall.) Dean had obtained a judgment foreclosing a mortgage executed by Nelson and wife; some stock owned by Nelson and his wife in a gas company was purchased by Dean at the sale made under the judgment; Nelson was proceeded against as a non-resident by an order of publication, and at and before the time he was warned to appear and answer he was within the Confederate lines; had been expelled from the state of Tennessee (where the judgment was rendered) by the military commander, and forbidden by a published order from returning; he had no opportunity of making any defense, and was prevented by the military order from coming within the federal lines. At the close of the war Nelson and wife instituted an action against Dean to recover the stock. Dean pleaded as a bar the judgment obtained upon the order of publication in the action against Nelson as a non-resident. Nelson’s petition was dismissed, and on an appeal to the supreme court the judgment ivas reversed. That court said, “The publication (the warning) was a mere idle form; the defendants could not lawfully see or obey it; as to them the proceedings were wholly void and inoperative.” From the report of that case there seems to have been no direct attack upon the judgment by any amended pleading, and the case was heard alone upon the bill, answer, and proof.
This case was followed by the case of Lasere v. Rochereau (reported in 17 Wall.) Lasere was expelled by a military order from his home in New Orleans, and while absent the appellee foreclosed a mortgage upon Lasere’s property, and had it sold. After Lasere’s return to New Orleans he instituted an action against the purchaser and others to vacate the judg *571 ment, and the court dismissed his petition. On an appeal the supreme court said, “ It is contrary to every principle of natural justice that any one should be condemned as to person or property without being heard.” Quoting from Dean v. Nelson, “They could not lawfully see or obey the summons; as to them the proceedings were wholly void and inoperative; the case thus condemned is substantially the case before us.”
Other cases might be cited sustaining the doctrine that no one can be deprived of his personal or property rights without being first heard. Such a plain principle of natural justice requires no authority to support it. In the cases referred to it is true the judgments were assailed by a direct proceeding, except in the case of Dean v. Nelson. Adjudications are not wanting, however, sustaining the doctrine that parol evidence may be admitted in collateral proceedings assailing judgments of superior courts; that whenever a right is asserted under such a proceeding, the facts showing the judgment void may be established by proof denying the verity of the record. Upon investigation it will be found that a large majority of those cases have reference to judgments rendered in other states; that is, where parties are attempting to enforce the judgment of a tribunal rendered in a state "other than that in'which the judgment is being assailed. Such was the case of Starbuck v. Murray (reported in 5 Wend.), and regarded as a leading case on the subject. The judgments of one'state, when sought to be enforced in another state, are not regarded as domestic judgments; and where the jurisdiction of the court to render such a judgment is assailed, that question (of jurisdiction) is always open to inquiry. It is only when the jurisdiction of the court in another state is not impeached, either as .to the subject-matter or the person, that the record of the judgment is entitled to full faith and credit. (Thompson v. Whitman, 18 Wall.; Story on Conflict of Laws.) We are not disposed to apply such a doctrine to domestic judgments. *572 The safer rule is, to require the party to appeal, apply for a new trial, or file his petition to vacate the judgment.
By an act of the legislature approved March 9, 1869, the Code of Practice was amended as follows: “ That section 445 of the Civil Code of Practice shall not apply to judgments granting a divorce so far as the divorce itself is involved, nor shall section 373 apply thereto.” Section 373 of the Code permits a party, where grounds for a new trial are discovered, after the term at which the verdict or decision was rendered, to file a petition for a new trial; this is limited to three years. Section 445 of the Code allows a defendant against whom a judgment is rendered, upon constructive service, to appear in court at any time within five years and move to have the action retried. Section 16 of the Civil Code denies the defendant the right of an appeal to this court from the judgment granting a divorce. So the appellee in this case, by reason of the act of March 9,- 1869, is denied the right to petition for a new trial, is denied the right (if a non-resident) to appear within five years and move to retry the case; and, by section 16 of the Code, has no appeal. When she appears in court, and by petition asks for a new trial, the law forbids it; when she asks an appeal, it is denied her; and, lastly, when the judgment she desires to assail is interposed to divest her of what she claims to be her right of property, she is told that parol evidence is inadmissible to show that a domestic judgment is void. Can such a case be brought within the rule by reason of public policy, the defendant denied a hearing, the most important relation in life severed by means of a void judgment, and the party wronged be without remedy? In such a case, the reasoning of the court in the case of Starbuck v. Murray might well apply. No rule will be allowed to violate every principle of natural justice by depriving the sane or insane of the rights of pei’son or property without a hearing. Every one whose rights are to be affected by a judicial proceeding must have *573 his day in court. This is one of the fundamentals of the law, and when a judgment has been rendered without citation or summons, there must be some remedy afforded the party complaining.
It is argued by counsel for the appellants, that the act of 1865, creating additional grounds for a divorce, is a law within itself, and that no service on the appellee or citation was necessary. This position is not tenable. The act is only an amendment to the original statute on the subject, giving additional causes for a divorce, and providing additional safeguards for the protection of the defendant. It does not profess to change the practice in civil cases, nor prescribe any other mode of getting the defendant before the court than is found in the Civil Code. The action for a divorce is a civil proceeding. A civil action is commenced by filing in the office of the clerk of the proper court a petition, and causing a summons to be issued. Whatever might have been the practice before the adoption of the Code, it is now the settled rule, and we know of no exception, that whenev.er it is necessary to make one a party defendant to an action, it is equally as necessary to have him before the court by an appearance, or the service of process actual or constructive.
Under our present practice no guardian ad litem can be appointed for an infant until he is served with process; nor can one be appointed to defend for a lunatic until he is served. The Code of Practice makes no provision in regard to lunatics except those who have been judicially ascertained to be of unsound mind. Prior to the adoption of the Code, judgments have been sustained against infants without service, where a guardian ad litem had been appointed; and so in regard to lunatics, where there had been a service on the committee. The committee had the care and custody of the lunatic’s property, and for that reason, doubtless, the practice prevailed.
It is further maintained by counsel, that as this institution *574 of marriage more deeply affects the state than the rights of individual parties, and as the rights growing out of that relation are subject always to be changed or destroyed by the sovereign will, the state is the controlling party in interest, and the safeguards provided by law for the protection of the defendant, and particularly the helpless and inoffensive, indicate clearly that the decree of divorce is to be regarded as the expressed sovereign will, and can not be disturbed or annulled except by the consent of the parties, as provided by the statute. That for this reason an appeal is denied and a new trial refused in such cases. "When the present constitution of Kentucky was adopted, the legislative department of the government was divested of that exercise of sovereignty, by which the institution of marriage was practically made one of convenience only, liable to be dissolved at the instance of one of the parties to the contract, and for reasons that were left alone to legislative discretion. By section 32 of article 2, state constitution, it is provided, “ That the general assembly shall have no power to grant divorces,” etc., but by general laws “ shall confer such power on the courts of justice.” The legislature, regarding the contract of marriage as higher and more sacred than ordinary contracts, provided the means by which parties interested in the preservation of the marital relation might be protected. It was never contemplated that the effort to maintain this relation by the enactment of proper laws should be construed as transferring to the judiciary a legislative discretion, which, when exercised and resulting in a judgment for a divorce, can never be questioned. We are not prepared to adjudge that the legislature of the state can delegate to the judiciary such unlimited power over the subject — the power to divorce for any cause, or to dissolve the relation without notice or citation to the parties in interest. The mind of the chancellor would revolt at such a judicial proceeding. The state is equally as much interested in preserving the marital relation *575 as it is in maintaining the judgment of a court dissolving it. When parties come into a court of justice, the right to a divorce is purely a judicial question, and if the judgment dissolving the relation is void, it must be so treated.
In the case of Meyar v. Meyar (3 Met.) the party divorced married shortly after the judgment was rendered. The wife, who had been proceeded agáinst as a non-resident, afterward appeared in court, filed her answer, and moved for a retrial of the cause. This ivas prior to the act of 1869, and there was at that time no law denying the defendant in a divorce case the right to apply for a new trial. The same objection was made in that case now urged here, that the party had again married; the judgment was final and conclusive, and no court had the power to disturb it.
This court in that case said: “Neither reason nor policy demands that judgments of divorce should be exempt from the general law applicable to new trials. The law does not favor divorces, and there is special reason for affording to courts having jurisdiction in such cases every possible means of preventing frauds and correcting any error or injustice committed in the judgment that may be complained of. No appeal lies from a judgment of divorce; and unless the wrong done can be righted by the court committing it, the party injured is without redress.”
The case of Maguire v. Maguire (reported in 7 Dana) was a proceeding under the statute of 1809, authorizing decrees of divorce for certain causes. The husband against whom the suit was instituted was at the time domiciled in the state of Alabama. He had never been domiciled in or a resident of this state. A decree of divorce was rendered, and the right of property as between the husband and the wife determined. The case being in this court for revision, the court (Chief Justice Robertson delivering the opinion) said, “There can, we think, be no objection to the manner in which the *576 chancellor divided the estate if he had authority to divorce the parties; but if he had no such authority, the decree concerning the estate was erroneous, and should be reversed.”
The court also in that case discussed the sovereign power of the state over the marital relation, and its dependency upon the sovereign will, but proceeded to say “that the chancellor had no 'jurisdiction to dissolve the marriage contract;” and further, “The chancellor’s decree being extra-judicial, must be deemed void here as well as elsewhere.” The decree as to the property was reversed, and the appeal as to the divorce dismissed for want of revisory power.
These cases are cited to refute the idea that, the state being more interested in the marital'relation than the parties to the contract creating it, a decree dissolving the relation is binding, although no jurisdiction is had over the person of the defendant to the action. If the decree in that case was void, in a collateral proceeding.between the husband and wife, or those claiming under them, affecting their property rights, this court would necessarily have held that the judgment of divorce was void, and did not alter the status of the parties. In that case the want of jurisdiction appeared from the record.
The evidence in this case shows that the appellee was never ascertained to be a lunatic by any judicial finding; that she was confined in the asylum by her husband; that she was there in obedience to his command, and subject alone to his control at the institution of the action for a divorce and when the judgment was rendered; that the domicil and residence of the husband was in the state of Kentucky from the time of their marriage until his death. Under such circumstances ' she was, as to the husband, neither an absent defendant nor non-resident in contemplation of the statute authorizing constructive service; and if she is to be regarded as having been a non-resident, having been in the custody of the husband, and in a place where she could have made no response if she *577 had desired to do so, the service was void. She was warned, but could make no answer except by the permission of the party warning her.
The husband may, no doubt, change the actual residence of the wife so as to authorize strangers to proceed against her as a non-resident, or the wife may voluntarily abandon the husband and take up a residence elsewhere that would authorize such a proceeding; but when the wife is absent in obedience to the command of her husband, or is confined by him in an asylum or other place, with no power to return or respond to a summons or order of warning, she can not be proceeded against by the husband as a non-resident or absent defendant. It matters not how pure the motives of the husband may be, if he can proceed in this mode against a lunatic wife, he can against one who is sane.
If the wife had been sane, can there be any question as to the correctness of the judgment ? Where is the rule other than that prescribed by the Code, by which the chancellor in determining the effect of the service of a summons in a civil action, is to be controlled by the mental condition of the party affected by it?
If, under his control and subject to his will, the wife is placed by the husband where she is powerless to respond if she had the mental power to assert her rights, the chancellor will not stop to inquire whether she was a lunatic or of sound mind, but must pronounce all such proceedings null and void.
In the investigation of this ease we have not lost sight of the public interest in the questions involved, or its importance to the parties directly interested. The children appellants are made legitimate by the statute, and the right of property is affected only to the extent that they may be compelled to contribute to satisfy the judgment in favor of appellee; nor could this court have interfered with the judgment below, if *578 there had been no statute on the subject. The law must be administered as we find it.
We also concur with the court below, that a trial of the issues of fact, by a jury in the divorce case, could be dispensed with by the chancellor, and if the trial by jury is to be adjudged a constitutional right in such a proceeding, the failure to direct such a trial in a civil action, does not render the judgment void, but merely erroneous. (Cooley’s Con. Lim. 410.)
The preliminary question raised by counsel for the appellants, as to the right of a person of unsound mind to institute an action by her next friend, was also properly decided. The action was really in the name of the appellee, although the name of the proehein ami appears, and having no committee, never having been found a lunatic by any judicial proceeding, the chancellor very properly permitted the action .to progress, and upon the refusal of the next friend to act, could have appointed some one to conduct the prosecution for her.
It is also insisted, that as the appellee is incapacitated from making an election as to whether she will hold under the will or against it, the chancellor, if required to make the election for her, should determine to abide by the provisions of the will, and require her to take the annual sum of $2,500. Having declared- the decree of divorce void, the rights of the appellee became fixed. This provision of the will could not have been made in lieu of dower, and the chancellor has no power to divest the appellee of her legal right. The appellee is entitled to dower and distribution in her deceased husband’s estate, and the judgment below must be affirmed.