CASE 15—PETITION EQUITY—MARCH 24.

# Northern Bank of Kentucky v. Hunt's Heirs.

APPEAL FROM LOUISVILLE CHANCERY COURT.

1. AN ORDER OF ATTACHMENT INDORSED ON A SUMMONS which runs in the name of "The Commonwealth of Kentucky," is to be regarded as running in the same name, and is therefore valid, although the words "The Commonwealth of Kentucky" do not appear on the back of the summons.
2. INDORSEMENTS ON A PAPER, if pertaining to the same matter, are to be regarded as a part of it, and the whole treated as one instrument.
3. VALIDITY OF SUMMONS.—A summons against "Thomas H. Hunt & Co." was not void, Thomas H. Hunt being a defendant in the petition.
4. A WARNING ORDER is in the nature of a rule, and is not a process within the meaning of the Code of Practice, or of that section of the Constitution which provides that the style of all process shall be "The Commonwealth of Kentucky."
5. A PROCESS is a writ or summons issued in the course of judicial proceedings.
6. WARNING ORDER.—Under the Code of Practice of 1854 the court was authorized to make the warning order; and while there is no provision in the present Code authorizing such a practice, yet the court may di-

rect the clerk to enter a warning order on the order book, and when it is made it is as effectual as if made by the clerk in vacation.

JAMES S. PIRTLE, C. B. SEYMOUR, BROWN, HUMPHREY & DAVIE FOR APPELLANT.

1. The attachment having been endorsed upon the summons, and the summons running in the name of the Commonwealth, the attachment also ran in the name of the Commonwealth. Such was the effect of the indorsement upon the process. (Hawkins v. Walker, 4 Bibb, 292; Williams v. Handley, 5 Bibb, 10; Jones v. Overstreet, 4 Monroe, 547; Nichols v. Taylor, 6 Monroe, 426; Cloyd v. Trotter, 118, 111, 393; Keller v. Stanley, 86 Ky., 242.)

2. The usage of the Louisville Chancery Court having been for thirty years to indorse the attachment upon the back of the summons, it is conclusive. (5 W. Va., 22; Sedgwick on Statutory and Constitutional Law, 217; Phelps v. Taylor, 4 Monroe, 170; Talbert v. Hooser, 12 Bush, 408.)

3. This practice of indorsing the attachment upon the summons having been adopted upon the passage of the Code of 1852, the contemporaneous construction should govern. (Harrison v. Commonwealth, 83 Ky., 171; Barbour v. Louisville, 83 Ky., 103; Edwards v. Darby, 12 Wheaton, 210; United States v. Bank of North Carolina, 6 Peters, 39; United States v. McDaniel, 7 Peters, 15; United States v. Moore, 95 U. S., 763; United States v. Philbrick, 120 U. S., 59.)

4. This being partnership property, and having been sold to pay a partnership debt, the heirs of one of the partners can not recover the property without paying the debt. (Bank of Kentucky v. Herndon, 1 Bush, 360; Black v. Bush, 7 Ben Monroe, 211; O'Bannon v. Miller, 4 Bush, 26; Howell v. Commercial Bank, 5 Bush, 100; 2 Pomeroy Equity, sections 620 and 1046; Shanks v. Klein, 104 U. S., 18; Logan v. Greenwall, 25 Federal Reporter, 299.)

5. The fact that one of the summonses was against "Thomas H. Hunt & Co." did not make it void. (Barneman v. Quackenboss, 11 Daly, 529.)

6. The fact that the court directed the clerk to enter the warning order did not affect its validity. (Newcomb v. Newcomb, 13 Bush, 544.)

H. S. BARKER, A. DUVALL FOR APPELLEES.

Brief not in record.

JUDGE PRYOR DELIVERED THE OPINION OF THE COURT.

In the year 1861, Thomas H. Hunt and Richard Curd were merchants in the city of Louisville under the firm name of Thomas H. Hunt & Co. The partnership had been formed prior to that time. In the conduct of their

business they drew bills of exchange on planters in the Southern States that were accepted and then discounted by the firm with the Northern Bank of Kentucky. The bills were presented at maturity and protested for non-payment.

Before the maturity of the paper, Thomas H. Hunt, one of the members of the firm, went into the confederate army, and when the war terminated took up his residence in New Orleans, where he lived until his death. The other partner, Richard Curd, left the State and made his domicil in Liverpool, England, where he lived until his death. After the paper matured the bank proceeded to make the firm liable as indorsers of the paper by a proceeding in the Louisville Chancery Court, obtaining attachments that were levied on the real estate in controversy, and sold as the property of the firm in satisfaction of these debts. The bank purchased the property in the year 1863, at the sale ordered by the court by virtue of the attachments. The sale was confirmed, and a deed made, divesting the partners of all title if the sale was valid.

In the year 1883, Thomas H. Hunt instituted the present action in the court below, in which it is contended that the attachment was void, and, therefore, the sale under it passed no title. Hunt having died, the action was revived in the name of his heirs, and Curd being dead, his heirs were also made parties. The title to the real estate levied on was in Richard Curd, as appeared of record; but the facts show that it was partnership property, purchased with partnership means and for partnership purposes. The bank sold this realty after its purchase to its co-appellants or their vendors, and they,

relying on the bank's warranty of title, brought the latter before the court in order that the latter might be held responsible on its warranty in the event the title proved defective.  It is plain that neither the heirs or devisees of Hunt and Curd would have any interest in this realty until the payment of the debts due by the firm, if no proceeding had been instituted by the bank. The title would pass to them at law, subject to the lien of the creditors through the partners for the payment of the partnership debts.   No innocent purchaser has intervened, and the only question presented or necessary to be considered is, was the attachment valid?

The appellees insist that the attachment was void. There were, in fact, two attachments, there being two suits, one of the actions against T. H. Hunt and R. A. Curd, and the other against Thomas H. Hunt & Co. The summons or process in each case was in the usual form, signed by the clerk, and upon each process was indorsed the order of the attachment.   Warning orders were properly made, but no personal service had, as both of the partners were then out of the State.

The process in each case, commanding the parties to appear and answer, is in the name of the *Commonwealth of Kentucky;* but the order of attachment indorsed on the back of the summons, unless it relates to the summons and is a part of it, does not run in the name of *The Commonwealth of Kentucky,* but reads: "The marshal is directed to attach and safely keep the property of the defendants, Thomas H. Hunt & Co., not exempt from execution, sufficient to satisfy plaintiffs' claim, amounting," etc.

The summons upon which this attachment is indorsed reads:

"The Commonwealth of Kentucky.

"*To the Marshal of the Louisville Chancery Court, greeting:*

"We command you to summon Thos. H. Hunt and R. A. Curd to answer a petition exhibited against them in our Louisville Chancery Court by the Northern Bank of Kentucky, 17,954, and warn them," etc.

The proper affidavits were made and bonds executed in obtaining the attachments; warning orders made on the records of the court; attorneys appointed to correspond, and report filed, etc. The proceedings were all regular and we perceive no reason why the firm was not divested of all title. It was the property of the firm that was sold and for a firm indebtedness.

It appears from the pleadings and the testimony in the case that the manner of issuing the attachments in this case was in pursuance of a practice sanctioned by the Louisville Chancery Court at the time and for years prior to the date at which this original process issued; and if this proceeding is now to be regarded as void and the indorsement on the summons as forming no part of the writ, the title to all property, real and personal, acquired under such sales would be questioned, and the mischief resulting from such a precedent could not well be estimated; nor would such a decision affect alone the proceedings in the Louisville Chancery Court, as we are aware that a like practice was followed in many of the judicial districts of the State; and when followed for so long a time and recognized by the profession as the proper mode of proceeding, this court, and every other, should regard the question as closed. The interpretation

or construction given this mode of proceeding makes the indorsement of the attachment a part of it, and as the summons runs in the name of the Commonwealth, so does the order of attachment. If the attachment had followed the summons with but the one signature of the clerk, it is then evident that no objection could be made to it; but as the clerk has affixed his signature—first to the summons and then to the order of attachment—it is contended that the one is divorced from the other, and for that reason the attachment is void. It is not only a reasonable, but a fair interpretation of the Code under which these proceedings were conducted, holding that the entire summons must be regarded as one—that which appears on its face as well as the indorsement upon it.

In the case of the United States v. Bank of North Carolina, reported in 6 Peters, 29, in discussing a question somewhat similar to the one before us, the court, in alluding to the interpretation given the terms of an act, said: "A practice so long and so general, would of itself furnish strong grounds for a liberal construction, and could not now be disturbed without introducing a train of serious mischiefs. We think the practice was founded in the true exposition of the terms and intent of the act; but if it were susceptible of some doubt, so long an acquiescence in it would justify us in yielding to it as a safe and reasonable exposition."

The case of Yeager v. Groves, reported in 78 Ky., 278, is not decisive of this case. There it was insisted the attachment was indorsed on the summons, but this court responded by saying that fact did not appear from the record, but an attachment alone signed by the clerk without any command from the sovereign, and for that

reason the attachment was held to be void. The language of the opinion may have authorized the inference that if the indorsement had appeared on the summons the attachment would, nevertheless, have been held invalid; still, the question was reserved, and we have no hesitation in adjudging that the summons with the indorsement upon it should be regarded as the command of the sovereign to summon the defendants and to attach their estate.

In construing any paper with a view of ascertaining its meaning, the whole must be considered; and whether written on the one side or on both, if pertaining to the same matter, it must be regarded as one instrument; and the fact that the obligation may bind one party to perform more than one act in consideration of what has been done by the other party, can make no difference; it is still but one agreement. In commercial paper, that which is on the back as well as on the face of the paper must be regarded as a part of it, and so of all contracts where the indorsement pertains to the same matter and is properly evidenced.

In Jones v. Overstreet, 4 Mon., 547, this court said: "It may be stated as an axiom in the municipal law of our country, that a memorandum at the foot, or on the back, of a deed, bond, judgment or execution, if made by competent authority, may enlarge, restrain, alter and qualify the signification and effect of the body of the writing. A memorandum at the foot of a judgment, that it is to be discharged by a smaller sum, or to have a credit for a sum; an indorsement of a deed or bond, varying or qualifying the terms in favor of the one party or the other, if properly evidenced; an indorsement on an

execution, that no security of any kind is to be taken, * *, are all of legal efficacy."

In Nichols v. Taylor, 6 Mon., 325, an execution was issued by the justice on a repleven bond, and was indorsed "no security can be taken." The justice signed the indorsement, but failed to sign the execution proper. This court held that it would have been more accurate to have signed the execution in the usual way, but that it had been often held "that indorsements which are made by the officer issuing an execution, form a part of the execution; and as the name of the justice immediately follows the indorsement, it must, to every essential purpose, be understood to be a signing by him and communicating to the execution the same force and effect that the most formal signing could do."

As said by counsel for the appellants, if the clerk had written the entire summons and attachments—beginning in the name of the Commonwealth, commanding the officer to perform the two acts—on the same side of the paper and then affixed his signature but once, could it be contended that the command to summon and attach only applied to summoning the parties and not to the attachment? We think not; in fact, the rule is both proper and reasonable, and this court would not think of disturbing the title to property, acquired time after time under this practice, upon such a technical ground. The fact that one of the summonses is against Thomas H. Hunt & Co., can make no difference. Thomas H. Hunt was a defendant in the petition and the summons was not void on that ground.

The Code of Practice of 1854 authorized the court to have the warning order entered. This was done and

signed by the chancellor.    Newcomb v. Newcomb, 13 Bush, 544.    Nor are we to be understood as deciding that an order of warning should run in the name of the Commonwealth; but on the contrary it is not that character of process comprised by section 5 of article 4 of the State Constitution, under which the style of all process shall be the *Commonwealth of Kentucky*.    It is more in the nature of a rule.    The proceeding is entirely *ex parte*, and the clerk in his ministerial capacity may hear proof as to the non-residence of the defendant and then make an order of warning; and while there is no provision in the present Code empowering the court to make the warning order, it necessarily follows that, having jurisdiction of the subject matter and control of the clerk in the discharge of his duties, the latter may be directed to enter an order of warning on the order book, and when made it becomes as effectual as if made by the clerk in vacation.    There is no command to any officer to execute this order, but it stands executed when an attorney is appointed to correspond, and a judgment *in rem* will be rendered—the facts authorizing it—if the defendant fails to answer within the time prescribed by the Code.

A process is a writ or summons issued in the course of judicial proceedings, and the warning to the non-resident is simply an order made by the clerk in vacation or during the term of the court, and is not deemed a process in the meaning of the Code, or of the constitutional provision referred to.

The court erred in holding the attachment to be invalid, and the judgment is reversed with directions to dismiss the petition.