# CHARLESTON.

## HOUSEMAN v. HOME INSURANCE CO.

Submitted March 7, 1916.    Decided April 18, 1916.

1. INSANE PERSONS—*Actions—Next Friend.*
    An insane person may prosecute an action in his own name by a next friend, when no committee has been appointed for him, or if appointed, has failed to accept or qualify, or is otherwise disqualified to act in that capacity. (p. 205).

2. SAME—*Actions—Capacity to Sue—Objections.*
    If contested, the question whether an insane plaintiff may sue by a next friend must be raised and determined before joinder and trial on other issues. Otherwise, the objection comes too late. (p. 205).

3. INSURANCE—*Proofs of Loss—Waiver—Denial of Liability.*
    Denial of liability on an insurance policy, based solely on an alleged want of unconditional ownership of the property destroyed,

·operates as a waiver of a provision thereof requiring proofs of the quantum of loss as a prerequisite to an action on the policy. (p. 209).

4. SAME—*Proofs of Loss—Exemption of Insured.*
   The insanity of an insured at the time of the loss, continued thereafter during the limitation period prescribed by the policy for commencement of an action thereon, exempts compliance with . the condition regarding proofs of loss. (p. 210).

5. SAME—*Actions on Policies—Burden of Proof.*
   On the insurer against loss by fire rests the burden of proving, when averred in defense of an action on the policy, breach of the condition against misrepresentation or concealment by the insured of the true ownership of the property damaged, or that the ownership thereof then was or since has become other than sole and unconditional. (p. 210).

6. SAME—*Forfeiture—Breach of Condition Subsequent—Ownership of Property—Sole and Unconditional Ownership.*
   Neither an option nor an invalid or conditional contract of sale of personal property by an insured, with reservation of title until payment of the purchase money, although possession is transferred to the vendee, will constitute a breach of the condition of the policy requiring "sole and unconditional ownership." (p. 212).

(MILLER, JUDGE, absent.)

Error to Circuit Court, Mercer County.

Action by W. H. Houseman, administrator, against the Home Insurance Company. Judgment for plaintiff, and defendant brings error.

*Affirmed.*

*Sexton & Roberts* and *Sanders, Crockett & Kee,* for plaintiff in error.

*Stokes & Sale,* for defendant in error.

LYNCH, JUDGE:

On this writ to the judgment for plaintiff rendered upon defendant's demurrer to the evidence, on the trial of an action of assumpsit based on a contract of insurance against damage or destruction by fire of a stock of merchandise and household goods, the meritorious questions concern the right of an insane plaintiff to sue by his next friend, the proof of

loss, and, as an element thereof, of the ownership of the property insured.

In Virginia, it has been held that equity has jurisdiction of a suit by an insane person by a next friend, either where no committee has been appointed or if appointed his interests are hostile or inimical to the property rights of the lunatic. *Bird* v. *Bird,* 21 Gratt. 202; *Houston* v. *Bland,* 81 Va. 588. And, according to 22 Cyc. 1231, the general rule seems to be: where no committee has been appointed, or if appointed refuses to qualify, or has been removed, the action may be prosecuted in the name of the insane by any competent person as next friend, with the sanction of the court, though the lunatic has not been judicially declared insane, if it otherwise appears he is insane. This rule was laid down or approved in *Newcomb* v. *Newcomb,* 76 Ky. 544; *Isle* v. *Cranby,* 189 Ill. 39; *Wagner* v. *Wagner,* 56 Neb. 511; *Kroebel* v. *Taylor,* 61 Atl. (N. J.) 257; *Abbott* v. *Hancock,* 123 N. C. 199; *Gray* v. *Park,* 155 Mass. 433; *Stanley* v. *Stanley,* 123 Ga. 122. In the Isle case, it was held, upon a motion to dismiss an action so brought, the court may inquire into and determine the question of sanity and where necessary appoint a proper person as next friend to prosecute the action for and in behalf of the actual plaintiff.

Whether because of his mental unsoundness a plaintiff can sue by his next friend is a question which should be raised and determined before trial. *Worthington* v. *Mercer,* 96 Ala. 310; *Lamb* v. *Lamb,* 23 Atl. (N. J.) 1009; *Bird* v. *Bird, supra.* But by no plea tendered or motion made before joinder on the issues raised, did defendant question the right to maintain this action as brought. Nor did it offer any evidence under the general issue to show the appointment and qualification of a committee for the plaintiff or any proceedings instituted for that purpose either in this State or in Virginia, the latter being the State of plaintiff's residence. On the contrary, it is proved that no such appointment has been made or attempted in either State. As the case proceeded virtually without protest or objection, and without the pretense of any disqualification or impropriety on the part of the next friend, to dismiss the action now, upon the mere suggestion of an irregu-

larity, may operate to absolve defendant from any liability under its contract of indemnity. Nor does defendant seem to rely, and it may be said with confidence it does not rely, on this defense to the right to a recovery on the policy. Besides, we see no merit in the proposition.

On the other questions, the case was tried on the general issue and specifications of defensive matters and replies thereto, as permitted by sec. 65, ch. 125, Code. The replies alleged certain grounds which, if proved, operated as waivers or estoppels.

The fire occurred November 25, 1913. It destroyed or damaged the greater part but not all of the property insured. The loss was partial, not total. Plaintiff, George C. Houseman, although competent to contract when the insurance was purchased, was at the date of the fire and thereafter remained and now is insane. What has since occurred in his behalf in respect of the loss was said and done through his son, W. H. Houseman, who prosecutes this action as next friend. He gave notice of the loss to the Flat Top Insurance Agency, through which as soliciting agent the insurance was procured. He received the correspondence addressed to the plaintiff concerning the loss, and answered it, occasionally in his own name, generally in plaintiff's name. Whatever was done to protect the interest of his father he did or caused to be done, or was the active agent in that behalf; and, if any proof was furnished, he secured and delivered the data to Hurt, the adjuster who, for the purpose of ascertaining the amount of the loss, represented the companies carrying risks on the property insured.

As the important witnesses, Hurt and W. H. Houseman contradicted each other on material questions only as to what was done in respect of the proof of the loss sustained and the ownership of the property. They met soon after the fire. Although Hurt admitted Houseman then furnished him data, which together with some invoices later delivered were sufficient to enable him to make up the requisite proofs except as to ownership, Houseman testified the proofs were prepared and verified by his affidavit in the presence of Hurt, who took and retained them. Subsequent negotiations had between

them by correspondence and interviews, in which counsel for plaintiff in part participated, however, seem to have proceeded as if something remained open for further consideration and concurrence upon the question of the sufficiency of the data and formality of the proofs.

Without undertaking to detail the contents of the numerous letters addressed, received and answered, and the personal discussion at such interviews, it suffices to say that, when summarized, the evidence sufficiently shows that defendant did not question the adequacy of the data except upon the question of ownership. For not only did Hurt as a witness for defendant admit he had information sufficient to enable him to make the necessary formal proof, but also that his custom was to formulate the memoranda at his office in Bluefield, and, except where complications arose, to accept and forward them to the companies carrying risks on the property, all of whom in this instance he represented. December 30, 1913, he wrote plaintiff: "Referring further to the loss on your stock of merchandise, I beg to advise that when you visit the Flat Top Insurance Agency for the purpose of discussing this matter with them, if you will bring me a complete list of your purchases I will submit the same to the several insurance companies and see what they have to say about the matter. The main trouble regarding your loss is the ownership of the property." "In taking up this loss under a nonwaiver agreement it developed that you had no interest in any of this property, but that your son W. H. Houseman was the sole and unconditional owner. I submitted these facts to the insurance companies, and they have requested me to advise you that if you feel you have any claim against them you are referred to the conditions of your policy contracts, and they hereby give you notice of their intent to insist upon a full compliance with all the conditions of their policy contracts." January 4, 1914, he also wrote plaintiff: "If you will send me a correct list of your purchases from date of your inventory (of July 1, 1913) to time of fire, also correct amount of merchandise returned, I will make up statement of loss and submit it to the companies and advise you of their decision." With these requests the testimony satisfactorily shows House-

man complied, and that Hurt did what he promised. For, evidently speaking for the companies, he said: "We wanted this assured (the plaintiff) to furnish proof of loss so as to establish the ownership of this property." "We wanted to know if George C. Houseman owned that property or owned interest in it sufficient to consume those policies. That is what we wanted to know. When two ownerships were asserted, we wanted to know who did own that" property. Besides, at a meeting of the representatives of the companies interested, convened at the instance of Hurt, who laid before them all the facts possessed by him, they declined to pay the loss except upon compliance with certain designated provisions contained within lines numbered from 7 to 30 and 67 to 80 of the insurance contracts. So far as now material, these provisions relate to an adjustment by agreement, or by appraisement if the parties fail to agree; the avoidance of the policy in the event of concealment or misrepresentation of any material fact concerning the insurance or the subject matter thereof, or if "the interest of the insured be other than unconditional and sole ownership."

What effect, then, shall be given these negotiations upon the demurrer to the evidence, conceding the apparent conflict of the testimony upon the question of the proof of loss. In such case, it is for the jury to say whether the inventory and other data offered by the assured, conceding the information furnished was of that character only, was accepted by the defendant through its agent, and by him retained as sufficient proof of the loss sustained. *Insurance Co.* v. *Edmundson,* 104 Va. 486. Moreover, upon a demurrer to evidence, the demurrant waives the benefit of all his evidence which conflicts with that of the demurree, and to it concedes as proved all the facts it tends to establish as well as all the inferences a jury trying the case could reasonably draw from them. So that if when considered alone or with other proof not in conflict therewith, together with all reasonable inferences deducible therefrom, the evidence of the demurree be sufficient to support a finding in his favor, the demurrer ought to be overruled and judgment entered on the conditional verdict, as

was done by the circuit court. *Barrett* v. *Coal Co.*, 55 W. Va. 395; *Johnson* v. *Burns*, 39 W. Va. 658.

Was the proof of plaintiff of that positive and convincing character as would under the liberality thus allowed on demurrer thereto, and the restrictions imposed on that tending to controvert it, support a verdict in his favor? W. H. Houseman unequivocally testified, as we have seen, that Hurt, in his presence and with his assistance, made up and he signed and by his affidavit verified a full and formal proof of loss on the occasion of their first meeting after the fire, and that Hurt took it with him and did not return it; nor did Hurt produce it at the trial when requested to do so. This testimony, it is true, Hurt denied; but his denial, however true it may be, necessarily is eliminated by the rules appertaining to demurrers to evidence, and hence can not be considered. It must be ignored as completely as if it were not before us. Besides, what later occurred or was done by or between Hurt and Houseman, or contained in the correspondence or said in the conferences, antagonistic to plaintiff, was explained in the testimony of the next friend as having been done only for the purpose of affording information of the correctness of such proofs. A jury could with propriety accept this explanation with reasonable certitude; for if all the proof to the contrary were excluded, as virtually it was by the demurrer, the facts testified to by him must necessarily have been adopted by the jury as correct because of their probative force and effect.

Moreover, another rule prevailing in this State and supported by ample authority, when applied to the facts of this case, excused plaintiff from making any further attempt to furnish defendant such proofs, conceding they were not furnished. When an insurance company denies liability on its contract for indemnity against loss by fire, on grounds other than want of such proofs, the company will be deemed and treated as having waived the same. *Sheppard* v. *Insurance Co.*, 21 W. Va. 368; *Deitz* v. *Insurance Co.*, 33 W. Va. 526; *Peninsular Co.* v. *Insurance Co.*, 35 W. Va. 666; *Cleavenger* v. *Insurance Co.*, 55 W. Va. 342.

That defendant assumed itself acquit of any obligation to

render compensation for the loss, on grounds other than failure to prove by the usual requisite formal methods the quantum of the damages done, there can be no reasonable doubt. Hurt, acting for defendant and its co-insurers, empowered by it so to do, virtually advised plaintiff of its intention to attempt to exonerate itself from liability exclusively by relying on the insured's alleged misrepresentation or concealment of the true status of the title. That he was so authorized seems reasonably clear; or, if not clear, a jury could infer such authority from the facts and circumstances detailed in the correspondence emanating from the different companies or inspired by them. This authority appears from the letters alluded to, in which Hurt promised to lay the facts in his possession before his principals, to enable them to determine the course they would pursue or the attitude they would assume as to their liability, and, when ascertained, to advise Houseman. This promise he evidently kept, as we infer from the information furnished by them through him; for, in effect, as observed, he says they told him they denied liability on account of the uncertain state of the title.

Moreover, if it be conceded that plaintiff did not sufficiently comply with the requirement as to the proof of loss, and could not furnish it or the data therefor or verify it when made, because insane at the time of and since the fire and confined in a hospital for treatment or detention, was he thereby excused from compliance with the condition of the contract requiring such proofs? This question arose in *Insurance Co.* v. *Boykin*, 12 Wall. 433, upon an instruction asked by defendant, and refused, that the insanity of the assured would not exempt him from the condition as to proofs of loss. In reply thereto the court, in the opinion, said the proposition "is too repugnant to justice and humanity to merit serious consideration;" and, in the syllabus, "if the insured was so insane as to be incapable of making an intelligent statement this would of itself excuse that condition of the policy." More positive terms were used in *Woodmen's Accident Association* v. *Pratt*, 62 Neb. 673, regarding the preliminary notice required in an accident policy.

Was plaintiff the sole and unconditional owner of the prop-

erty insured at the time of the loss?   On the question of own-
ership of the property at the date of the insurance contract,
and since, the evidence was ample, on demurrer, to prove that
plaintiff had the legal title.   Of its status the underwriters,
through the soliciting agent, were at that time informed and
advised.   Although upon the question of the continuity of
ownership there is some conflict, yet, as on defendant devolv-
ed the duty of establishing the contrary situation in respect
thereof by such preponderant evidence as to overcome the
proof in support of the continuing ownership, where plain-
tiff has made out a prima facie case in respect thereof, the
correctness of the jury's conditional verdict, on defendant's
demurrer, must be determined in favor of the plaintiff.   That
the burden did rest on the demurrant can not be doubted.
*Sheppard* v. *Insurance Co., supra; Insurance Co.* v. *Savings
Association,* 107 Va. 701.

As W. H. Houseman had theretofore failed in business,
paying a large percent of the indebtedness incurred, plaintiff
furnished him the money to purchase the property insured
and left to him the management of the store, with the under-
standing, not denied, that the title thereto, and to any other
property purchased to replenish the stock as the conduct of
the business from time to time required, should vest and re-
main in the father until he was repaid the money so furnish-
ed, with interest.   These facts, and the further fact that the
agreement or option was not consummated by fulfillment of
the condition as to repayment of the money invested in the
goods, are proved and not controverted except as hereafter
noted.

An affidavit purporting to have been made by W. H.
Houseman immediately after the fire, and statements attrib-
uted to him by Hurt, Fisher and Katzen, are relied on to cast
doubt upon the question of the real ownership of the goods
insured.   They tend to show a claim by him antagonistic to
plaintiff.   Of these, however, no knowledge was traced to
George C. Houseman.   He was not cognizant of any effort to
reflect uncertainty upon the right to have and enjoy the ben-
efit of the insurance indemnity.   His mental condition and
absence denied him an opportunity to speak in his own be-

half. His mouth was closed. And from him defendant can not withhold the fruits of the contract of insurance merely on the ground that a title adverse to his is asserted in his ab-absence without an opportunity on his part to deny or contest it.

But W. H. Houseman challenged the correctness of the affidavit, and denied he claimed any interest in the subject matter of the insurance except as custodian and manager, coupled with the right to purchase it by repayment of the money originally advanced by his father on it. Furthermore, he testified that he informed Fisher and Hurt that his father was the sole owner of the property, and that, with this information, Hurt, under the Pythian sign of distress, assured him no harm would result and no prejudice would arise from anything said or done by him in respect of the claim of ownership. That Hurt did make this statement, in the circumstances detailed, he does not declare to be untrue. He does not frankly deny it, but equivocates. When inquired of as to what occurred with reference to the secret distress signal, he replied: "There was nothing of any consequence passed except to exchange greetings along that line." There is also some proof in the record that W. H. Houseman admitted he procured from plaintiff a letter conceding his ownership, and of statements made by him that he had operated the store in the father's name in order to elude his creditors. But no such letter was produced, and he denied receiving any; and no outstanding debts were proved, and he testified there were none incurred by him that remained unsatisfied. Then why should he seek to disguise or conceal the true status of the title to the property?

Nor does the conditional contract of sale, of which W. H. Houseman testified, divest the title of plaintiff until the performance of the condition by repayment of the purchase money of the goods. For, as held in *Erb* v. *Insurance Co.*, 99 Ia. 727, and *Vogel* v. *Insurance Co.*, 9 Gray 23, a vendor of personal property, reserving the title until payment of the purchase money, is not guilty of misrepresentation or concealment when in purchasing insurance thereon he represents himself to be the sole and unconditional owner, although he

. has delivered possession thereof to the vendee. See also notes in 7 Am. & Eng. Ann. Cas. 498 and 20 L. R. A. (N. S.) 779. Why may not plaintiff and his son, who occupy a similar business relation, also find protection under the same legal principle? Nor will an option to purchase personal property work a change in the title of the owner until the offer is accepted and the conditions are performed. *Insurance Co.* v. *Kerr,* 129 Fed. 723; *Davis* v. *Insurance Co.,* 10 Allen 113; *Insurance Co.* v. *Savings Association,* 107 Va. 701. And to effectuate a breach of a condition in a policy of insurance, avoiding it in respect of a change in title or ownership, the sale or transfer must have been actual and valid as between the parties. *Orrell* v. *Insurance Co.,* 13 Gray 431; and note in 7 Am. & Eng. Cas. 498. So in *Gerling* v. *Insurance Co.,* 39 W. Va. 690, it was held that "a deed of conveyance made by the insured during the policy and before the loss, but invalid by reason of the grantor's mental incompetency to make such deed, was not such a change or transfer of title as would forfeit the policy."

These legal propositions defendant did not discuss. The burden of showing a transfer of title, as we have seen, devolved on it; and from what has been said the conclusion is inevitable that it has failed to establish its pretension that plaintiff was other than sole and unconditional owner of the property insured and damaged. Nor, in view of the well recognized principles governing demurrers to evidence, can it be said there were such gross inconsistencies or contradictions in the testimony of W. H. Houseman as to discredit the title of plaintiff, when considered with respect to his mental condition and lack of knowledge of the adverse claims to the contrary. Besides, we have been unable to perceive wherein W. H. Houseman has been so grossly variant as to subject himself to criticism, except as noted. These so called deviations he has explained; and the explanation given was not so doubtful as to be unreasonable or unworthy of credence, or that a jury ought not to have accepted it as true if the case had been submitted to them, or the court reached the same conclusion on the demurrer.

Finding no error in the record, we affirm the judgment.

*Affirmed.*