VALISANO *v.* CONTINENTAL INSURANCE CO.

1. INSURANCE—INSANE PERSON EXCUSED FROM SUBMITTING PROOF OF LOSS.

   Insured person who is insane is excused from submitting proof of loss, since such action on his part would be nullity.

2. SAME—PROOF OF LOSS—WAIVER.

   Whether insurance companies waived proof of loss by offering to pay certain sum and no more, *held,* question of fact for jury.

3. SAME—HUSBAND AND WIFE—WIFE'S DUTY TO TAKE OUT INSURANCE ON INSANE HUSBAND'S PROPERTY.

   Where husband was insane, and no guardian appointed, wife had right and duty to conserve his property by taking out insurance thereon, and, after its destruction by fire, to attempt to adjust loss.

4. SAME—ESTOPPEL.

   Where insurance companies recognized wife's right and authority to take out insurance on insane husband's property and to adjust loss, they may not later object thereto.

Error to Gogebic; Driscoll (George O.), J. Submitted January 20, 1931. (Docket No. 23, Calendar No. 35,311.) Decided April 7, 1931.

Assumpsit by Anton Valisano, by Mary Valisano, his next friend, against Continental Insurance Company of New York and others on fire insurance policies. Judgment for plaintiff. Defendants bring error. Affirmed.

*Jones & Patek* (*Ernest A. O'Brien,* of counsel), for plaintiff.

*Charles M. Humphrey,* for defendants.

BUTZEL, C. J. A dwelling house in the city of Wakefield, Michigan, owned by plaintiff Anton Valisano, was insured in each of the four defendant insurance companies. The amount of the policies

---

As to effect of insanity or sickness of insured as excuse for failure to give notice or furnish proofs of loss as required by policy of fire insurance, see annotation in L. R. A. 1917A, 305.

aggregated the sum of $3,800. Valisano had been insane since 1913 and his property was being looked after by his wife, Mary, who has brought suit as his next friend. She obtained the insurance from defendants' agent, who knew of Valisano's insanity both at the time the policies were issued and for many years previous thereto.

On May 8, 1928, a fire occurred, resulting, it is claimed, in a total loss. Mrs. Valisano notified the insurance companies. The adjusters met and made her an offer of settlement. The testimony is in dispute as to just what occurred. Plaintiff's wife claims that they first offered her $2,700, and then only $1,700. She testified that they told her they would pay $1,700 and no more. That she thereupon stated she would get an attorney and fight for her rights, whereupon they said: "Do as you please. It is up to you."

On June 20, 1928, she began four suits, which have been consolidated in this action. All of the policies follow the Michigan standard fire insurance form. The defendants claim that they did not know of plaintiff's insanity, that no proofs of loss were furnished them, that the suits were prematurely brought, and that there was no appraisement as demanded by them, that the verdict is excessive and against the great weight of the evidence. Plaintiff claims that owing to Anton's insanity, no proofs of loss were required, that no notice of demand for appraisement was given until after the suits were begun, that proofs of loss, appraisement, etc., were waived by defendants' adjusters when they stated that the companies would pay a certain amount and no more; that this constituted a discharge of the obligation to furnish proof of loss, etc. This latter question was one of those submitted to the jury who found in favor of plaintiff for the full amount of the

insurance. All of the questions raised are before us for review.

An insured person who is insane is excused from submitting a proof of loss. Such an action on his part would be a nullity. *Insurance Companies* v. *Boykin,* 12 Wall. (U. S.) 433; *Hartford Fire Ins. Co.* v. *Doll,* 23 Fed. (2d) 443 (56 A. L. R. 1059); *Houseman* v. *Home Insurance Co.,* 78 W. Va. 203 (88 S. E. 1048, L. R. A. 1917A, 299); *Woodmen Accident Ass'n* v. *Pratt,* 62 Neb. 673 (87 N. W. 546, 89 Am. St. Rep. 777); *Concordia Fire Ins. Co.* v. *Waterford,* 145 Ark. 420 (224 S. W. 953, 13 A. L. R. 1387).

The question of failure to send notice by the assured on account of his mental incompetence arose in *Reed* v. *Loyal Protective Ass'n,* 154 Mich. 161, where the court stated:

"But we are committed to the doctrine in insurance cases that a provision requiring a notice on pain of forfeiture will not be construed to require strict performance, when by a plain act of God it is made impossible of performance."

The disputed question as to whether defendants' agent stated to Mrs. Valisano that they would pay a certain sum and no more was submitted to the jury. There were corroborating witnesses who testified that this statement was made, although defendants' witnesses vigorously denied they made it. It became a question of fact for the jury who decided in plaintiff's favor. The case falls squarely within the doctrine set forth in *Rott* v. *Westchester Fire Ins. Co.,* 218 Mich. 576, and *Maki* v. *Commonwealth Ins. Co.,* 232 Mich. 295.

It is further claimed that Mrs. Valisano had neither right or authority to act for her husband. Defendants, through their agent, both in issuing the

policies and in attempting to adjust the loss made no objections whatsoever to her so acting. As an agent *ex necessitate* she had a right to act. Although as such agent she would not have the right to engage in new enterprises, nevertheless it was both her right and duty to conserve plaintiff's property, and in that connection to take out the insurance and attempt to adjust the loss.

In *Barron* v. *McChesney,* 198 Iowa, 657 (200 N. W. 197), the wife took a mortgage from the debtor of her insane husband, and the question was raised whether she had authority. The court, in holding that she had, said:

"In this case, the plaintiff was taken in mental derangement to the hospital, from which he returned a few weeks later. The wife remained at the home on the farm and looked after all the property and transacted the current daily business. To that extent, at least, she was fairly within the scope of authority which the law would presume in her favor. The general scope of such authority was to conserve the property rights of her husband. It did not extend to the initiation of new enterprises. It was in an attempt to conserve her husband's property that she accepted delivery of the mortgage. The mortgagor had become insolvent. He was owing a debt to her husband. It was unsecured. The mortgagor tendered the security. This was plainly beneficial to her husband and conserving in character. The burden this benefit carried was of a minor character, as compared with the benefit conferred."

Unless and until a guardian is appointed, it was incumbent on the wife to protect her insane husband's property. Defendants recognized this right and authority and may not now object.

The question is raised as to the amount of the verdict, which is sufficiently supported by the evi-

dence. Other minor questions raised we do not believe of such importance as to require discussion.

The judgment of the lower court is affirmed, with costs.

WIEST, CLARK, McDONALD, POTTER, SHARPE, NORTH, and FEAD, JJ., concurred.