Grafton,
Feb. 2, 1937.

Norman M. Bean

*v.*

Philadelphia Fire & Marine Insurance Co.

Same

*v.*

Mercantile Fire Insurance Co. of America.

*Willard Wight* and *George W. Pike* (*Mr. Wight* orally), for the plaintiff.

*John J. Moke* (by brief and orally), for the Philadelphia Fire & Marine Insurance Company.

*Thorp & Branch* (*Mr. Branch* orally), for the Mercantile Insurance Company of America.

WOODBURY, J. The provision of the standard form of fire insurance policy quoted above which requires that a signed and sworn statement or proof of loss be filed with the insurer forthwith after a fire is in conflict with P. L., c. 276, s. 9, and compliance therewith is not essential to the maintenance of a suit upon the policy. *Levi* v. *Insurance Co.*, 75 N. H. 551, 553, and cases cited.

The question remains, however, as to whether or not the plaintiff's insanity, if proved, would excuse him from giving the notice required by section 9 of chapter 276 of the Public Laws.

On the issue of the plaintiff's insanity one of the doctors from the staff of the state hospital testified that in his opinion the plaintiff was insane when admitted to that institution, that thereafter his condition gradually improved, and that upon his discharge "he was normal enough to get around and look after his own business." He also testified that this change was "a gradual process," that it was "a matter of relativity," and that there was no precise time during

his stay at the hospital when it could be said that "he went from an insane condition to a condition that you might ordinarily term normal." In addition, one of the doctors who committed the plaintiff to the state hospital testified to the effect that when he saw the plaintiff between one and two o'clock in the morning after the fire he was disheveled in appearance, that "his eyes were bloodshot as if he had been crying," and that he was in a "highly nervous state." This doctor also testified that the plaintiff's condition then was the same as it was during the evening of April 6, when he was committed to the hospital. The foregoing evidence is clearly sufficient to warrant the conclusion that the plaintiff was mentally unbalanced from a time almost immediately after the fire on April 4 until August 16, 1935.

It appears in the record that on April 9, 1935, the plaintiff wrote a letter to a friend requesting assistance in obtaining an early discharge from the hospital, and from this the defendants argue that if he could write this letter it could not be found that insanity was the cause of his failure to write to the defendants' agent giving him notice of the loss. This argument is without merit because the doctor from the staff of the state hospital, referred to above, testified that the plaintiff, owing to his mental condition, "was very dependent on us to arrange his outside affairs," and that his condition was such that it probably would not have occurred to him to write to the defendants regarding his loss. He also testified that, although there was not necessarily anything irrational or indicative of insanity in the letter which he did write, "That doesn't mean anything." Insanity, to be causal, may consist in a condition which renders it impossible to write at all, but it does not of necessity have to consist in such a condition. It is no less causal if it obliterates the need for writing from the mind.

The defendants' additional argument to the effect that because of the absence of evidence of organic nervous disease, the plaintiff, in contemplation of law, must be regarded as sane, is also without merit. *Dennett* v. *Dennett*, 44 N. H. 531, 538. The law is concerned with the question of whether or not the plaintiff's mind is so far affected as to render him incapable of transacting business like that in question (*Pevear* v. *Pevear*, 79 N. H. 524; *Upton* v. *Company*, 81 N. H. 489, 490) and whether that incapacity springs from organic disease or functional impairment may be of evidentiary but is not of operative importance. *Roberts* v. *Barker*, 63 N. H. 332, 335, and cases cited. It follows that there is sufficient evidence in the record to warrant the finding that due to insanity the plaintiff was unable to give the writ-

ten notice required by the statute until August 16, 1935, which was within thirty days of the date upon which notice was actually given.

Chapter 276 of the Public Laws is not a penal statute. It derives operative force from the fact that, by virtue of section 25, as well as by express stipulation in the policies here in suit, it is included in and forms a part of both contracts of insurance. *Gleason* v. *Insurance Co.,* 73 N. H. 583, 586. By section 9 thereof a duty is imposed upon the insured for the benefit of the insurer, the office of this section being "to compel the insured to notify insurers of a loss in time to enable them to investigate its cause." *Flynn* v. *Insurance Co.,* 77 N. H. 431. This requirement of notice constitutes a condition precedent to the right of recovery (*Patrick* v. *Insurance Co.,* 43 N. H. 621) but "If there be a condition precedent to do an impossible thing, the obligation becomes single." *Worsley* v. *Wood,* 6 D. & E. 710, 719, cited in *Johnson* v. *Company,* 73 N. H. 259, 262.

With the exception of Alabama and New York the courts of this country, in so far as they have passed upon the matter, appear to be unanimous in holding that causal insanity on the part of an insured renders it impossible for him to comply with the condition precedent of notice. In *Johnson* v. *Insurance Co.,* 70 Fed. (2d) 41, after citing cases from the minority jurisdictions, the following language appears: "An overwhelming majority of the state courts that have passed upon the matter have, however, laid down the rule that a condition precedent requiring notice or proof of disability is excused when its performance is impossible by reason of physical or mental incapacity of the insured, as when the insured is insane or unconscious during the period when proof should have been furnished, and that the condition may be performed within a reasonable time after the incapacity is removed." This case also contains an exhaustive citation of authorities. In addition see Joyce, Insurance, s. 3280; 14 R. C. L. 1333; 54 A. L. R. 611, and for specific application of the foregoing principle to fire insurance policies see *Germania Fire Ins. Co.* v. *Boykin,* 12 Wall. 433; *Hartford Fire Ins. Co.* v. *Doll,* 23 Fed. (2d) 443; *Houseman* v. *Insurance Co.,* 78 W. Va. 203.

The case of *Kilgore* v. *Association,* 78 N. H. 498, relied upon by the defendants, is not an authority at variance with the majority rule stated above. In that case the insanity of the insured was held not to excuse non-payment of premiums, but the payment of premiums goes to the existence of the contract of indemnity itself, it does not relate to procedure after a loss has occurred under an existing contract.

420

In our opinion the majority rule is more in harmony with the general policy of the law of contracts which protects insane persons from the results of their incapacity and we have no hesitation in applying it in the construction of the statute.

It follows that the defendants' motions for nonsuits were improperly granted.

*New trial.*

BRANCH, J., did not sit: PAGE, J., was absent: the others concurred.