EDWARDS v ST MARY'S HOSPITAL (ON REMAND)

Docket No. 77973. Submitted May 2, 1984, at Lansing.—Decided June 28, 1984.

Plaintiff, Willie C. Edwards, administrator of the estate of his wife, Christine Edwards, deceased, brought an action against St. Mary's Hospital and others alleging negligence in the treatment of the deceased. During the deceased's hospital stay she became comatose, allegedly because of an adverse drug reaction. While she was comatose, plaintiff wrote a letter to the hospital purporting to revoke an arbitration agreement which his wife had executed. He brought this action after she died without having regained consciousness. The defendants moved for an order to proceed with arbitration, which was granted, Kent Circuit Court, George V. Boucher, J. Plaintiff appealed and the Court of Appeals reversed, 120 Mich App 1 (1982). Defendants sought leave to appeal to the Supreme Court which, in lieu of granting leave to appeal, remanded to the Court of Appeals for consideration of the issue of the alleged revocation of the consent to arbitrate. 419 Mich 868 (1984). On remand, *held:*

Under the circumstances of this case, the husband was the legal representative of his comatose wife until an administrator was appointed. As such, he had the authority to revoke the arbitration agreement.

Reversed and remanded for trial.

1. WORDS AND PHRASES — LEGAL REPRESENTATIVE.

The term "legal representative" is not necessarily restricted to the personal representative of one deceased but is broad enough to cover all persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his acts or by operations of law.

2. HUSBAND AND WIFE — LEGAL REPRESENTATIVE.

A husband, under normal circumstances, may be the "legal representative" of his wife when she is comatose.

REFERENCE FOR POINTS IN HEADNOTES
[1, 2] 41 Am Jur 2d, Husband and Wife § 5.

*Charfoos, Christensen, Gilbert & Archer, P.C.* (by *John G. Konkel*), for plaintiff.

*Kitch, Suhrheinrich, Smith, Saurbier & Drutchas, P.C.* (by *Stephen M. Kelley*), for St. Mary's Hospital.

*Baxter & Hammond* (by *Richard B. Baxter* and *Robert N. Hammond*), for Lynn S. Hedeman, M.D.

*Cholette, Perkins & Buchanan* (by *Kenneth L. Block*), for Edward C. Thompson, M.D., and others.

On Remand

Before: R. B. Burns, P.J., and R. M. Maher and Beasley, JJ.

R. B. Burns, P.J. This case comes to us upon remand from the Supreme Court. See 419 Mich 862 (1984).

Originally, this Court in 120 Mich App 1; 327 NW2d 377 (1982), held that the medical malpractice arbitration act, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,* was unconstitutional. The Supreme Court's remand order stated:

"On order of the Court, appellants' applications for leave to appeal having been ordered held in abeyance pending decision in *Morris v Metriyakool* (Docket No. 67480), and *Jackson v Detroit Memorial Hospital* (Docket No. 68280), and said decision having been issued on March 1, 1984, 418 Mich 423,
"Now, therefore, the applications for leave to appeal are considered and, pursuant to GCR 1963, 853.2(4), in lieu of granting leave to appeal, we reverse the judgment of the Court of Appeals and remand the case to the Court of Appeals to consider the issue raised by

plaintiff concerning alleged revocation of consent to arbitrate.

"We do not retain jurisdiction."

The facts of the case were set forth in our earlier opinion as follows:

"On February 27, 1978, plaintiff's decedent, Christine Edwards, was admitted as an inpatient in the defendant St. Mary's Hospital for the purpose of undergoing surgery to remove a pituitary tumor. Prior to surgery Mrs. Edwards executed an arbitration agreement with the hospital. On February 28, 1978, the surgical procedure was performed by defendant Dr. Hedeman, with defendant Dr. Thompson serving as anesthesiologist. Plaintiff claims that, though Mrs. Edwards' chart indicated she was allergic to penicillin, the chart was not consulted and she was intravenously administered a dose of ampicillin. As a result, shortly thereafter, she suffered a cardiovascular collapse and fell into a coma.

"In April, 1978, while Mrs. Edwards remained in a comatose condition, her husband, the plaintiff in this action, mailed a letter signed by him to defendant hospital purportedly revoking the arbitration agreement. Mrs. Edwards remained as a patient in St. Mary's Hospital until May 3, 1978. She died on August 4, 1978, without regaining consciousness.

"On October 24, 1978, plaintiff Willie C. Edwards was appointed administrator of the estate of his deceased wife by probate court order, and on April 23, 1979, commenced this suit alleging professional negligence. Defendants moved for an order to proceed to arbitration asserting the attempt to revoke the arbitration agreement was ineffective since plaintiff was not his wife's 'legal representative' as that term is used in the medical malpractice arbitration act, MCL 600.5040 *et seq.;* MSA 27A.5040 *et seq.,* and, therefore, the revocation was ineffective. Plaintiff appeals from the trial court's order granting defendant's motion." 120 Mich App 3-4.

The precise legal issue in this case is the defini-

tion of the words "legal representative" as used in the Michigan medical malpractice statute, MCL 600.5042(3); MSA 27A.5042(3):

"The agreement to arbitrate shall provide that the person receiving health care or treatment or his legal representative, but not the hospital, may revoke the agreement within 60 days after discharge from the hospital by notifying the hospital in writing."

These words have never been interpreted as applying to this specific statute.

However, in a different context, the United States Supreme Court did interpret these words:

"The term 'legal representatives' is not necessarily restricted to the personal representatives of one deceased, but is sufficiently broad to cover all persons who, with respect to his property, stand in his place and represent his interests, whether transferred to them by his acts or by operation of law.' *Mutual Life Ins Co of New York v Armstrong,* 117 US 591, 597; 6 S Ct 877, 879; 29 L Ed 997, 999 (1886)."

It appears natural to include a husband within the term "legal representative" when his wife is comatose. Under normal circumstances the husband will look out for his wife's business and best interests. These sentiments seem to be naturally inferred from *Valisano v Continental Ins Co,* 254 Mich 122; 235 NW 868 (1931). In that case, the plaintiff's husband had been insane since 1913. In looking after her husband's property, the plaintiff bought insurance from the defendants. The defendants, however, refused to pay, arguing that the plaintiff had no authority to insure her husband's property. In rejecting this argument the Court ruled:

"Defendants, through their agent, both in issuing the policies and in attempting to adjust the loss made no objections whatsoever to her so acting. As an agent *ex necessitate* she had a right to act. Although as such agent she would not have the right to engage in new enterprises, nevertheless it was both her right and duty to conserve plaintiff's property, and in that connection to take out the insurance and attempt to adjust the loss.

\* \* \*

"Unless and until a guardian is appointed, it was incumbent on the wife to protect her insane husband's property." *Id.,* pp 124-125.

In our opinion, under the facts of this case, the husband was the legal representative of his comatose wife until an administrator was appointed.

Reversed and remanded for trial.