Roberta MORGAN, on behalf of herself and as Administrator of the Estate of Dwaine Morgan, Plaintiff–Appellant,

v.

Dr. John W. OLDS, Dr. David Lemon, Dr. John Fieselmann, and Iowa Methodist Medical Center, Defendants–Appellees.

No. 86–1091.

Court of Appeals of Iowa.

Oct. 28, 1987.

Philip B. Mears, Richard H. Zimmermann, and Wendy E. Geertz of Mears, Zim-

mermann & Mears, Iowa City, for plaintiff-appellant.

Marsha Ternus and Michael Figenshaw of Bradshaw, Fowler, Proctor & Fairgrave, Des Moines, for defendant-appellee doctors.

Hugh J. Cain and Thomas A. Finley of Duncan, Jones, Riley & Finley, Des Moines, for defendant-appellee hospital.

Heard by OXBERGER, C.J., and DONIELSON and SCHLEGEL, JJ.

OXBERGER, Chief Judge.

Plaintiff Roberta Morgan appeals the judgment rendered in favor of the defendant doctors in a medical malpractice action. She raises three issues on appeal: (1) that the court's instruction on liability is confusing and misleading, misstates the legal standard for consent, and fails to adequately instruct the jury on plaintiff's main theory of recovery; (2) that the court erred by failing to give instructions on intentional infliction of emotional distress; and (3) that the dismissal of defendant Iowa Methodist Medical Center was an error. We affirm.

Dwaine Morgan was admitted to Iowa Methodist Medical Center (IMMC) on May 22, 1981, following an episode of cardiac arrest. CPR was successful and Mr. Morgan regained conscious functioning. Morgan, however, suffered two more cardiac arrests. Resuscitation was again successful and Morgan survived; however, Morgan suffered brain damage due to a lack of oxygen to the brain and lapsed into a coma from which he never awoke.

It became apparent to Morgan's physicians that the prognosis for his regaining consciousness was bleak. Neurologic testing showed severe damage to the cerebral cortex. Morgan, although he required the assistance of a mechanical respirator, retained brain stem function, which controls breathing and other bodily functions, other than conscious awareness. He was, therefore, not "brain dead." Morgan's neurologist, Dr. Doro, felt the brain damage was irreversible. He, however, testified that Morgan could probably have been kept alive for a long time in a chronic coma, or "vegetative state." Because of the dim prognosis, the physicians decided to recommend to Mrs. Morgan that further life-sustaining treatment be withheld in the event such treatment became necessary. At trial, Mrs. Morgan testified that she did not consent to this plan because she had not received information justifying the decision. The doctors testified that Mrs. Morgan did consent to the decision.

Dr. Olds recalls consent being given on June 2 during a conference between himself, Dr. Fieselmann, Dr. Uber, a social service worker, and Mrs. Morgan. The doctors suggested that Morgan be weaned from his respirator to see if he would be able to breathe on his own, but that after this was accomplished, he should not be placed back on the respirator or otherwise resuscitated if his condition deteriorated. Dr. Fieselmann also recalled this conversation. It was also the understanding of Mrs. Morgan's relative that consent had been given to withhold heroic measures.

Mrs. Morgan testified she was aware at the time of the discussion that the brain damage was probably irreversible, but that the medical information she had received did not convince her the decision was appropriate or necessary. She had been informed of the results of only one of two planned EEGs which, while grim, indicated to her that there was still hope. She had been told that her husband could probably survive a long time in a chronic vegetative state. Even though this would most likely be the highest level of recovery, she felt it was not a good reason to allow Morgan to die. She felt this would have also been Morgan's preference. Mrs. Morgan prepared a note summarizing her questions and concerns regarding the treatment decision. She showed this note to Dr. Fieselmann and again discussed the course of treatment. The note stated "You have the whole picture, plus the experience and I will stand by the decision. Need more details for me, for later." The doctors contend this statement also indicates Mrs. Morgan's consent to the treatment.

On June 7, 1981, Mr. Morgan was successfully weaned from the respirator. Later in the day, however, he began to experi-

ence difficulty. His condition deteriorated and, in conformance with the plan, no additional life-sustaining procedures were provided and Mr. Morgan died.

Our review in law actions is for corrections of errors of law. Iowa R.App.P. 4. The jury's findings of fact are binding upon us if supported by substantial evidence. Iowa R.App.P. 14(f)(1).

Morgan's first argument is that the court's jury instruction on liability is confusing and misleading, misstates the legal standard for consent, and fails to adequately instruct the jury on plaintiff's main theory of recovery. The doctors contend that any error in the instructions was harmless since the doctors did not owe a duty to Mrs. Morgan to obtain her informed consent; and consequently, she has no cause of action against them.

The relevant portion of Morgan's complaint states:

### COUNT I—Breach of Duty to Roberta Morgan

19. In treating Dwaine Morgan, a critically ill patient, defendants owed to his next of kin and spouse, Roberta Morgan, the duty to employ reasonable care in consulting with and obtaining consent prior to any decision with respect to the treatment of the patient.

20. In making the medical decision to undertake a course of medical treatment that would not take all measures possible to sustain his life, the Defendants did not reasonably consult with and receive consent from Dwaine Morgan, or in the event of his incapacity to give such consent, to consult or receive such consent from Roberta Morgan.

21. Defendant's conduct in not adequately consulting Roberta Morgan and in not receiving her consent was in reckless disregard of the duty owed Roberta Morgan.

22. Roberta Morgan, as a proximate and actual result of Defendant's conduct, suffered severe or extreme emotional distress.

Morgan's position on appeal is that if the jury had been properly instructed on the consent issue, they could have then found facts necessary to support a cause of action for emotional distress. However, the plaintiff's pleadings and arguments are wholly predicated upon the existence of an independent duty owed by the doctors to Mrs. Morgan, as spouse of Dwaine Morgan, to obtain her consent before withholding treatment, and that, a breach of this duty would allow Mrs. Morgan to recover damages for her emotional distress.

■ Iowa law recognizes that a doctor has a duty to obtain a patient's informed consent before performing a procedure where such consent is required. *Pauscher v. Iowa Methodist Medical Center*, 408 N.W.2d 355, 358 (Iowa 1987); *Cowman v. Hornaday*, 329 N.W.2d 422, 424 (Iowa 1983). The duty arises out of the patient's right, absent extenuating circumstances, to exercise control over his or her body by making an informed decision regarding the course of medical treatment. *Pauscher*, 408 N.W.2d at 407; *Cowman*, 329 N.W.2d at 424–25. Performing a procedure without obtaining this consent is a battery for which a patient may recover. *Moser v. Stallings*, 387 N.W.2d 599, 601–02 (Iowa 1986); *Perin v. Hayne* 210 N.W.2d 609, 617–18 (Iowa 1973). In the majority of cases the patient is able to make the decision; however, in some cases, the patient is incompetent, as the result of being comatose, for example, and unable to make the decision. Extraordinary concerns arise in these cases. These concerns become critical when the decision to be made involves the withholding of life-sustaining procedures.

■ The question raised by the defendants and presented by plaintiff's petition is whether the attending doctors have an independent duty to the incompetent patient's family to employ reasonable care in consulting with and obtaining their consent prior to any decision with respect to the treatment of the incompetent patient. We hold that no such independent duty exists; however, the doctor, as part of his duty to the incompetent patient, must consult with the incompetent patient's surrogate decision-maker before implementing a course

of treatment. We do not address plaintiff's bystander claim because matters not properly raised at trial are not reviewable on appeal. *Shill v. Careage Corp.*, 353 N.W.2d 416, 420–21 (Iowa 1984).

■ Incompetency does not vitiate the patient's right to choose the particular treatment or the doctor's duty to obtain the necessary consent. *In re Quinlan*, 70 N.J. 10, 355 A.2d 647, 664 (1976); *see also Matter of Conroy*, 98 N.J. 321, 486 A.2d 1209, 1229 (1985); *Matter of Spring*, 380 Mass. 629, 405 N.E.2d 115, 119 (1980); *Superintendent of Belchertown v. Saikewicz*, 373 Mass. 728, 370 N.E.2d 417, 427 (1977). To preserve this right, a "substituted judgment" is made on the incompetent's behalf by a surrogate decisionmaker. *In re Quinlan*, 355 A.2d at 664; *Matter of Spring*, 405 N.E.2d at 119; *Saikewicz*, 370 N.E.2d at 431. This decision is usually made by members of the incompetent's family. The decision made should, after considering the patient's actual interests, preferences, present and future incompetency, be the decision that would have been made by the patient if competent.[1] *Matter of Conroy*, 486 A.2d at 1229; *In re Quinlan*, 355 A.2d at 664; *Matter of Spring*, 405 N.E.2d at 119.

■ When a doctor implements a course of treatment without obtaining the patient's consent, he breaches his duty and is liable to the patient for any resultant damages. *Moser*, 387 N.W.2d at 601–02; *Perin*, 210 N.W.2d at 617–18. Similarly, when a doctor fails to obtain the consent of the incompetent patient's surrogate decisionmaker, he breaches his duty to the patient and is liable for any resultant damages. The patient, however, is the only party who may recover for the breach since the duty is owed to the patient and not the surrogate decisionmaker or the patient's family. Because the physician's duty to obtain informed consent runs to the patient alone, we hold Mrs. Morgan does not have an independent cause of action for emotional distress. Her right to recover would

properly be asserted as a loss of consortium claim incident to any breach of duty owed to her husband. Because we have held Mrs. Morgan does not have an independent cause of action for emotional distress, we conclude any error in the jury instruction was harmless and, therefore, do not examine the instruction.

Plaintiff's second argument on appeal is that the trial court erred in not giving an additional instruction on the intentional infliction of emotional distress. The defendant doctors reply by arguing that plaintiff did not produce sufficient evidence to generate a jury question.

■ Parties to a lawsuit have the right to have a legal theory submitted to the jury so long as it is supported by the pleadings and by substantial evidence. *Fratzke v. Meyer*, 398 N.W.2d 200, 203 (Iowa App. 1986); *Carter v. Wiese Corp.*, 360 N.W.2d 122, 132 (Iowa App.1984). In determining whether a jury question is raised, the evidence must be viewed in the light most favorable to the party having the burden of proof. *Coppola v. Jameson*, 200 N.W.2d 877, 879 (Iowa 1972); *Meyer*, 398 N.W.2d at 203–04. If reasonable minds can differ on the issue, it is for the jury to decide. *Id.* We are convinced there was insufficient evidence to allow a jury to find the defendants' conduct was outrageous or that they acted intentionally or in reckless disregard in not taking heroic measures to resuscitate Mr. Morgan.

■ To recover for the intentional infliction of emotional distress, a plaintiff must prove:

(1) Outrageous conduct by the defendant;

(2) The defendant's intention of causing, or reckless disregard of the probability of causing, emotional distress;

(3) The plaintiff's suffering severe or extreme emotional distress; and

(4) Actual and proximate causation of the emotional distress by the defendant's outrageous conduct.

Iowa Code § 144A (1985).

---

1. After Mr. Morgan's death, the Iowa legislature passed the Life-sustaining Procedures Act.

*Meyer v. Nottger*, 241 N.W.2d 911, 918 (Iowa 1976). Outrageous conduct is "conduct exceeding all bounds usually tolerated by decent society." *Nottger*, 241 N.W.2d at 918. Recklessness is defined as follows:

> The actor's conduct is in reckless disregard of the safety of another if he does an act or intentionally fails to do an act which it is his duty to the other to do, knowing or having reason to know of facts which would lead a reasonable man to realize, not only that his conduct creates an unreasonable risk of physical harm to another, but also that such risk is substantially greater than that which is necessary to make his conduct negligent.

*Nottger*, 241 N.W.2d at 918–19. The defendants contend plaintiff has not produced sufficient evidence to generate a jury question on the first two elements.

▮ The evidence shows that on June 2, 1981, Mrs. Morgan had a conference with her husband's doctors concerning her husband's condition and treatment. It was the understanding of the doctors and plaintiff's in-laws, the Galbraiths, that heroic measures would not be taken if Mr. Morgan got into trouble after he was weaned from the respirator. Mrs. Morgan, on the night of June 2, prepared a letter to Dr. Olds stating in part: "You have the whole picture, plus the experience and I will stand by the decision. Need more details for me, for later." It also does not appear from the evidence that Mrs. Morgan withdrew her consent or objected to the decision. While the situation was a tragic one, we feel the most plaintiff's evidence shows is possibly a misunderstanding and not conduct rising to the level of outrageousness necessary to recover under plaintiff's theory. There is also no evidence to support a finding the defendant doctors acted intentionally or in reckless disregard of the probability of causing emotional distress. We therefore hold the trial court did not err in refusing to submit plaintiff's theory of intentional infliction of emotional distress to the jury.

Due to our resolution of plaintiff's first two issues, it is unnecessary for us to address the question of whether the defendant Iowa Methodist Medical Center should have been dismissed as a defendant. The judgment entered in favor of the defendants is affirmed.

AFFIRMED.

SNELL, J., takes no part.