YOUNG v OAKLAND GENERAL HOSPITAL

Docket No. 99285. Submitted January 4, 1989, at Detroit. Decided
February 22, 1989. Leave to appeal applied for.

 Clara E. Tucker received medical treatment, including a blood
transfusion, at Oakland General Hospital. Following Tucker's
death, her grandson, Lawrence K. Young, individually and as
personal representative of Tucker's estate, brought an action in
Oakland Circuit Court against Oakland General Hospital and
several of the hospital's medical staff. Plaintiff alleged that he
and Tucker, while she was alive, were adherents of Jehovah's
Witnesses, a religion which prohibits blood transfusions. Plain-
tiff further alleged that the blood transfusion administered to
Tucker violated her constitutional right of free exercise of
religion, constituted intentional infliction of emotional distress
upon plaintiff and Tucker, and violated an agreement between
plaintiff and the hospital staff. Plaintiff also claimed that
Tucker was incompetent at the time of hospitalization and that
defendants committed a battery upon her by performing the
blood transfusion without permission from Tucker's family. The
case was remanded to the 43rd District Court following media-
tion. Defendants moved for summary disposition as to all
claims, contending that there were no genuine issues of mate-
rial fact and that they were entitled to judgment as a matter of
law. The district court granted defendants' motion as to the
intentional infliction of emotional distress claim, finding that
defendants had not intended to injure the plaintiff or decedent,
but denied defendants' motion as to the rest of plaintiff's
claims, ruling that genuine issues of material fact existed so as
to preclude summary disposition of those claims. The Oakland
Circuit Court, Gene Schnelz, J., granted defendants' application
for leave to appeal, but then exercised superintending control
in granting summary disposition in favor of defendants as to all

REFERENCES

Am Jur 2d, Constitutional Law §§ 471-475, 484; Physicians, Sur-
geons, and Other Healers §§ 174 et seq.

See the Index to Annotations under Freedom of Religion; Informed
Consent; Jehovah's Witnesses; Physicians and Surgeons.

claims and dismissing the appeal. Plaintiff sought and was granted leave to appeal before the Court of Appeals.

The Court of Appeals *held:*

1. The circuit court erred in exercising superintending control inasmuch as appeal by leave was the proper appellate procedure under the court rules.

2. The right of free exercise of religion, as secured by the First Amendment, applies to religious, rather than philosophical or personal, beliefs. The affidavits, depositions, admissions and other documentary evidence in this case reveal that the decedent was not a Jehovah's Witness and that her aversion to blood transfusions was not based on religious belief.

3. Since it cannot be established that the decedent adhered to a religious tenet against blood transfusions, it would be impossible at trial for plaintiff to support the claim that defendants intentionally inflicted emotional distress upon the decedent by giving her a blood transfusion.

4. The evidence presented in support of defendants' motion showed that Helen Young, the decedent's daughter and plaintiff's mother, consented to the blood transfusion on behalf of the then incompetent decedent. Thus, defendants cannot be liable for battery since consent had been given for the blood transfusion.

5. Because Helen Young, and not plaintiff, had acted as the decedent's surrogate decisionmaker with regard to any decision over the decedent's medical treatment, any agreement or "contract" made by plaintiff with the hospital staff regarding the decedent's treatment was invalid. Thus, it would be impossible at trial for plaintiff to establish that the transfusion administered to the decedent was in violation of an agreement and that defendants intentionally inflicted emotional distress upon plaintiff.

Affirmed.

1. CONSTITUTIONAL LAW — FREE EXERCISE OF RELIGION — PHILOSOPHICAL OR PERSONAL BELIEFS.

The constitutionally protected right of free exercise of religion applies to religious, rather than philosophical or personal, beliefs (US Const, Am I).

2. PHYSICIANS AND SURGEONS — ASSAULT AND BATTERY — CONSENT TO TREATMENT.

A physician commits an assault and battery and may be required to respond in damages where he treats or operates on a patient without consent; consent may be either express or implied; consent is implied where an emergency procedure is required

and there is no opportunity to obtain actual consent or where the patient seeks treatment or otherwise manifests a willingness to submit to a particular course of treatment.

3. Physicians and Surgeons — Consent to Treatment — Incompetent Patients.

   A physician of an incompetent patient does not have an independent duty to the incompetent patient's family to employ reasonable care in consulting with and obtaining their consent to any decision with respect to the treatment of the incompetent patient; such duty to obtain consent is owed to the patient and, if the patient has a surrogate decisionmaker, the duty is breached where the physician fails to obtain the decisionmaker's consent.

*Frank R. Langton & Associates, P.C.* (by *Charles E. Langton*), for plaintiff.

*Williams, Schaefer, Ruby & Williams, P.C.* (by *Margaret A. Suma*), for defendants.

Before: Gillis, P.J., and Shepherd and Sawyer, JJ.

Per Curiam. Plaintiff appeals by leave granted the circuit court's order reversing the district court's order denying, in part, defendants-appellees' motion for summary disposition under MCR 2.116(C)(10). We affirm.

Plaintiff filed suit in circuit court on October 24, 1983, for events arising from Clara Tucker's hospitalization in 1982. Clara Tucker was plaintiff's grandmother. Briefly, plaintiff is a Jehovah's Witness and, as an adherent of that religion, is opposed to blood transfusions. While Tucker was in defendant hospital, she received a blood transfusion and, later, died. Thereafter, plaintiff was appointed the personal representative of Tucker's estate.

Plaintiff filed a suit claiming that defendants had deprived Tucker of her rights pursuant to 42

USC 1985(3) and 1986 because they were aware that she was "a Jehovah's Witness or followed the tenants [sic] of that religion prohibiting blood transfusions." Plaintiff alleged that these same acts constituted intentional infliction of emotional distress. Plaintiff further claimed that Tucker was incompetent from the time of her hospitalization and that defendants committed a battery upon her by performing the blood transfusion without permission from her family or legal guardian. Finally, plaintiff claimed that defendant hospital, through its employee, contracted with him not to give Tucker blood and that defendants breached this contract.

After mediation, the case was remanded to the district court and defendants moved for summary disposition under MCR 2.116(C)(10). Defendants claimed that discovery revealed that Tucker was not a Jehovah's Witness and did not have a religious belief concerning blood transfusions consistent with those held by Jehovah's Witnesses. Defendants also argued that, given these facts, they did not intentionally intend to inflict emotional distress upon Tucker. Defendants further argued that they did not commit a battery upon Tucker because she was alert and responsive on the day they gave her blood and she did not object to the transfusion. Finally, defendants argued that the "contract" signed by plaintiff was against public policy.

Plaintiff responded, claiming that his daughter-in-law's testimony demonstrated that Tucker's beliefs were religiously based. Plaintiff also claimed to be Tucker's legal representative, relying on this Court's decision in *Edwards v St Mary's Hospital (On Remand)*, 135 Mich App 753; 356 NW2d 255 (1984).

On January 21, 1986, the district court issued its

opinion. The court held that there was testimony that Tucker shared a belief consistent with Jehovah's Witnesses' beliefs regarding blood transfusions. Therefore, the district court denied defendants' motion to dismiss Count I. However, the district court granted defendants' motion to dismiss plaintiff's Count II, which involved intentional infliction of emotional distress, finding defendants did not intend to injure plaintiff or Tucker. The district court also denied defendants' motion to dismiss the battery count, ruling that there was a question of fact whether Tucker or one authorized to act for her, if she was incompetent, consented to the blood transfusion. The district court also noted that whether the circumstances constituted a medical emergency, excusing the need for consent, was also in dispute. Finally, the district court found that there was a question of fact as to whether plaintiff was Tucker's legal representative at the time he signed the contract stating that Tucker was not to receive blood products.

Defendants applied for leave to appeal to the circuit court. The circuit court consolidated defendants' appeals, granted defendants' applications for leave to appeal and then exercised superintending control over the matter to rule on defendants' motions. The court ordered the parties to submit the same briefs that they had filed with the district court. On February 25, 1987, after reviewing the briefs and supporting evidence, the circuit court held that defendants' motion for summary disposition should be granted because plaintiff admitted in his deposition that he was not Tucker's legal representative and that Tucker was not a Jehovah's Witness. Consequently, the circuit court granted defendants' motion for summary disposition and dismissed defendants' appeal.

Plaintiff then filed for leave to appeal to this Court. After plaintiff stipulated to dismissing defendant Laffer from the suit, this Court granted leave to appeal.

Plaintiff first claims that the circuit court erred when it exercised superintending control. Plaintiff also claims that the circuit court erred when it considered only the parties' briefs and supporting evidence rather than all of the affidavits, pleadings, depositions, admissions, and documentary evidence then filed in the action in making its decision. See MCR 2.116(G)(5). We agree that the circuit court improperly exercised superintending control because leave to appeal was available. See MCR 3.302, 7.101 and 7.103. Moreover, we are unable to determine what "supporting evidence" the circuit court reviewed, even though we note that the circuit court indicated that it would review the depositions filed before ruling. Nevertheless, we believe that a court's duty to review evidence extends to affidavits, depositions, admissions and documentary evidence referred to by the parties in support of their positions regarding the motion for summary disposition. MCR 2.116(G). In any event, we will review the merits of the case because the circuit court would have reached the same result had it granted defendants' application for leave to appeal.

A motion for summary disposition under MCR 2.116(C)(10) tests the factual support for a claim. *Boyle v Odette,* 168 Mich App 737, 742; 425 NW2d 472 (1988). Summary disposition is appropriate under this subrule only if the court is satisfied that it is impossible for the nonmoving party's claim to be supported at trial because of a deficiency which cannot be overcome. The trial court must give the benefit of any reasonable doubt to the nonmoving party. *Id.* at 742-743. This Court is

liberal in finding a genuine issue of material fact. *Id.* at 743. Nevertheless, where the opposing party fails to come forward with evidence, beyond its allegations or denials in the pleadings, to establish the existence of a material factual dispute, the motion is properly granted. *Id.;* MCR 2.116(G)(4).

In Count I, plaintiff alleged that defendants had conspired to deprive Tucker of her First Amendment rights to practice her religion. As noted above, plaintiff alleged that Tucker "was a Jehovah's Witness or followed tenants [sic] of that religion prohibiting blood transfusions." In his answers to interrogatories as well as in his deposition, plaintiff conceded that Tucker was not a Jehovah's Witness. Nonetheless, plaintiff contends that his deposition testimony as well as his daughter-in-law's deposition testimony demonstrate that Tucker's opposition to blood transfusions was religiously based, even though Tucker was not a confirmed Jehovah's Witness.

The First Amendment protects claims rooted in religious, rather than philosophical or personal, beliefs. *Wisconsin v Yoder,* 406 US 205, 215-219; 92 S Ct 1526; 32 L Ed 2d 15 (1972). Having reviewed plaintiff's deposition, we conclude that, while he believed that Tucker, in general, had an aversion to blood transfusions, he did not know if this aversion was religiously based. In fact, despite plaintiff's deposition testimony, we note that Tucker signed a form agreeing to a blood or blood-component transfusion on November 9, 1970, with another hospital. Moreover, reviewing plaintiff's daughter-in-law's deposition testimony in context, it is clear that plaintiff's daughter-in-law believed that Tucker's alleged aversion to blood transfusions was not religiously based. Thus, plaintiff has failed to present evidence which raises a genuine issue of material fact and defendants' motion for

summary disposition as to Count I should have been granted.

In Count II, plaintiff alleged that defendants intentionally inflicted emotional distress upon Tucker by giving her a blood transfusion contrary to her religious beliefs and upon him by giving Tucker a transfusion contrary to his contract with defendant hospital. Defendants claim that this issue is not preserved for appeal because plaintiff never appealed the district court's order on this issue to the circuit court. We disagree. Once the circuit court dismissed plaintiff's suit, its order became a final order and plaintiff was entitled to appeal other previously entered orders. In any event, given our discussion of Count I, we agree that Count II was properly dismissed insofar as it involved Tucker's estate's claim for intentional infliction of emotional distress. For reasons discussed *infra,* the district court also properly granted defendants' motion for summary disposition as to plaintiff's claim for intentional infliction of emotional distress.

In Count III, plaintiff alleged that defendants committed a battery upon Tucker by not obtaining consent from her or, in the event that she was incompetent, from her family or from a person legally authorized to represent her. If a physician treats or operates on a patient without consent, he has committed an assault and battery and may be required to respond in damages. *Banks v Wittenberg,* 82 Mich App 274, 279; 266 NW2d 788 (1978), lv den 403 Mich 809 (1978). Such consent may be express or implied. *Id.* at 280. For example, consent is implied where an emergency procedure is required and there is no opportunity to obtain actual consent or where the patient seeks treatment or otherwise manifests a willingness to submit to a particular course of treatment. *Id.*

Doctor Schwartz, Tucker's physician, testified that he spoke with her about having a blood transfusion and that Tucker "did not seem to have any objection." Schwartz could not recall when he spoke with Tucker. Moreover, notes on Tucker's chart indicated that Tucker was "alert and responsive" on the day she received the transfusion. Nonetheless, defendant Head Nurse Varga testified in her deposition that it was difficult to arouse Tucker and when she was awake "the words she said were really just confabulations."

Schwartz also testified that Tucker's hemoglobin level was critical, given its progressive decline. On the other hand, plaintiff claimed that no medical emergency existed because Tucker's hemoglobin dropped from 7.4 grams on December 7 to 7.1 grams on December 14 and Tucker did not receive a transfusion until December 15. Schwartz noted that it may have taken a number of hours to obtain the blood. Plaintiff, however, notes that Schwartz conceded that there may be a 0.1 gram error in hemoglobin tests and plaintiff testified that doctors told him that the blood transfusion was given to make Tucker comfortable.

Even if we agreed that Varga's testimony created a genuine issue of material fact as to Tucker's competency to consent to the transfusion and that the failure to immediately give Tucker a blood transfusion created a genuine issue of material fact as to whether a medical emergency existed, we still believe that the motion for summary disposition should have been granted. Where a patient is incompetent, the patient's surrogate decisionmaker, usually a member of the patient's family, makes a decision which would have been made by the patient if he or she were still competent. See, e.g., *Morgan v Olds,* 417 NW2d 232 (Iowa App, 1987); *In the Matter of Claire C Conroy,* 98

NJ 321; 486 A2d 1209 (1985). In this case, Tucker's spouse predeceased her and she had one daughter, Helen Young. Helen was not a Jehovah's Witness. Tucker had also raised plaintiff, Helen's son, from the time he was ten days old. Tucker did not live with either Helen or plaintiff in her later years. Apparently, Tucker and plaintiff held Tucker's property as joint tenants with rights of survivorship. While Helen initially declined to give permission for a blood transfusion, Nurse Varga noted on Tucker's chart that Helen did give permission for the transfusion which subsequently occurred. Before the transfusion occurred, the hospital administrator determined that plaintiff was not Tucker's legal guardian and that Tucker was not a Jehovah's Witness. Hence, this case involved a dispute as to Tucker's treatment between Helen, Tucker's daughter, and plaintiff, Tucker's grandson. Under these circumstances, we cannot hold that the hospital erred when it treated Helen rather than plaintiff as Tucker's legal representative until a legal guardian was actually appointed. We note that in *Edwards, supra,* a husband was treated as his comatose wife's legal representative for purposes of revoking an arbitration agreement until an administrator was appointed. Moreover, MCL 700.454(3); MSA 27.5454(3) indicates that an adult child of a legally incapacitated person is preferred, after a spouse, to be designated as that person's guardian. Hence, even assuming that Tucker was incompetent, the hospital did not commit a battery when it gave her a blood transfusion because it had Helen Young's consent to do so and, therefore, summary disposition should have been granted as to Count III.

In Count IV, plaintiff claimed that defendants breached a contract made between himself and defendant hospital's employee. On November 30,

Doctor Richard Weisenburger had a discussion with plaintiff where he explained that he believed that heroic measures should not be taken to keep Tucker alive. Plaintiff agreed with this because he believed Tucker would not have wanted such measures taken. Thereafter, Weisenburger left and when he came back he told plaintiff that he had spoken with another person, who had told him that plaintiff was Tucker's grandson and that Tucker's daughter should be the one to consent. After several attempts, Helen was reached by telephone. Plaintiff explained the situation to Helen and then she conferred with Dr. Weisenburger. Dr. Weisenburger then made the following notations in Tucker's chart:

> 8:00 pm: At the request of pt. [patient's] daughter per phone conversation w/ [with] myself [Weisenburger] that the following regimen be strictly adhered to @ [at] her request.
> (1) No cardiac life support other than pharmaceutical i.e. (CPR, compression or pacing).
> (2) Pt. [patient] not to be reintubated or placed on ventilator should extubation occur.
> (3) Pt. [patient] is not to receive any blood or blood derivatives.
> We release all attending physicians & assistants & hosp. [hospital] from any responsibility whatsoever for any untoward results occurring from the above requests, including death.
> /s/ Richard Weisenburger int. [intern]
> /s/ Helen Young/Lawrence Young

Weisenburger signed Helen's name.

Thereafter, Weisenburger spoke with Dr. Schwartz and made the following notation on Tucker's chart:

(4) Correction of #2.

Respiratory care i.e. (intubation & ventilation) should be under the discretion of the attending physician. (Dr. Schwartz)

/s/ Richard Weisenburger

/s/ Helen Young/Lawrence Young

Weisenburger crossed out instruction 2 and noted that instructions 1, 3 and 4 should be followed.

As noted in *Morgan, supra,* attending doctors do not have an independent duty to the incompetent patient's family to employ reasonable care in consulting with and obtaining their consent prior to any decision with respect to the treatment of the incompetent patient. Instead, any duty which arises is owed to the patient and that duty is breached when the patient does not consent to the treatment or, if the patient is incompetent, the patient's surrogate decisionmaker does not consent to the treatment. *Id.* Here, it is clear that defendants considered Helen to be Tucker's surrogate decisionmaker. Thus, the agreement made was between Tucker, through Helen, Tucker's substitute decisionmaker, and defendant hospital through Dr. Weisenburger. The agreement was revised when Tucker later gave her consent to the transfusion. Hence, we hold that even if plaintiff's signature appeared on the notations on Tucker's chart, no separate contract was created between plaintiff, individually, and defendants and that any such agreement would be void where he was not Tucker's legal guardian or substitute decisionmaker. *Id.* Likewise, plaintiff could not bring a separate suit for intentional infliction of emotional distress. *Id.*

Affirmed.