# STATE OF MICHIGAN

# COURT OF APPEALS

ROBERT WALWORTH and MARY
WALWORTH,

       Plaintiffs-Appellants,

v

METROPOLITAN HOSPITAL d/b/a
METRO HEALTH HOSPITAL,

       Defendant,

and

KENNETH H MARKIEWICZ DO, KENNETH H
MARKIEWICZ DO PC, and EAST PARIS ENT
ASSOCIATES,

       Defendants-Appellees.

UNPUBLISHED
July 28, 2016

No. 327795
Kent Circuit Court
LC No. 13-011630-NH

Before: RIORDAN, P.J., and SAAD and MARKEY, JJ.

PER CURIAM.

In this medical malpractice action, plaintiffs appeal by right the trial court's May 26, 2015 order striking plaintiffs sole standard of care expert, Dr. Donald Kitain, "for the reasons stated on the record," and dismissing plaintiffs' complaint with prejudice. We affirm.

## I. SUMMARY OF FACTS AND PROCEEDINGS

Plaintiffs allege that Dr. Kenneth Markiewicz, a board certified specialist in otorhinolaryngology, was negligent while performing a procedure known as a canaloplasty on plaintiff Robert Walworth's right auditory canal to remove exostoses or bony growths which had occluded the canal. The canaloplasty required Dr. Markiewicz to use a rotating "Skeeter" drill to remove the bony growths from plaintiff's[1] ear canal. Following the October 27, 2011 procedure, plaintiff discovered that he had lost virtually all hearing in his right ear. Plaintiffs' theory of the

---

[1] The singular "plaintiff" refers to the injured plaintiff, Robert Walworth.

-1-

case is that Dr. Markiewicz allowed the Skeeter drill to contact plaintiff's tympanic membrane (eardrum) injuring it and resulting in hearing loss.

Defendants' theory of the case was that Dr. Markiewicz did not touch the plaintiff's eardrum with the Skeeter drill and had taken several precautions to avoid doing so. Further, defendants contended that the potential of having the Skeeter drill contact a patient's eardrum during the canaloplasty procedure is a known potential complication or risk. According to Dr. Markiewicz, he had explained to plaintiff that in "any ear surgery there is potential for hearing loss, and that can be anything from a subtle change to complete loss of hearing."

On December 13, 2013, plaintiffs filed this medical malpractice action in Kent County Circuit Court against Dr. Markiewicz and his professional corporation. Plaintiffs' complaint was accompanied by an affidavit of merit regarding the standard of care and its alleged breach signed by Dr. Donald Kitain who, like Dr. Markiewicz, is board certified in otorhinolaryngology.

Dr. Kitain was deposed on November 4, 2014. Although Dr. Kitain holds the same board certified specialty as Dr. Markiewicz, he testified in his deposition that he has had virtually no experience performing the canaloplasty procedure. Specifically, Dr. Kitain testified:

*Q.* Do you perform canaloplasties in your practice, Dr. Kitain?

*A.* No, I don't.

*Q.* Have you ever?

*A.* No.

*Q.* Did you do any in your residency?

*A.* Only watching them, but I didn't actually perform them.

*Q.* How many do you think you watched during the course of your residency?

*A.* Maybe half a dozen.

*Q.* Since completing your training in 1987, have you ever watched a canaloplasty?

*A.* No.

*Q.* So it's been 27 years at least since you have seen a canaloplasty performed?

*A.* Correct.

*Q.* If you have a patient who presents to your office with exostoses or osteomas, do you refer them to another practice?

*A.* I refer them to somebody who I feel can appropriately perform the surgery.

* * * * *

*Q.* If I am understanding you correctly, you refer these patients who need canaloplasties to a neuro-otologist, because as you said, you want to refer them to somebody that you feel has experience performing canaloplasties?

*A.* Correct.

*Q.* And also because you, yourself, do not have the requisite training or experience to enable you to comfortably perform these procedures?

*A.* Correct.

In addition, although Dr. Kitain professed to have knowledge regarding the standard of care for performing canaloplasty because he performs other surgeries in and around the ear anatomy, he acknowledged that he does not perform surgery involving the temporal bone, which was the source of the bony growths removed during the canaloplasty procedure. Furthermore, Dr. Kitain does not use the type of surgical instrument used during the canaloplasty, the Skeeter drill.

On April 13, 2015, two months before the scheduled trial date of June 15, 2015, defendants moved to strike Dr. Kitain as plaintiffs' sole standard of care expert witness and to dismiss plaintiffs' case. The motion was heard and granted on May 8, 2015. In addition to arguing that Dr. Kitain was qualified under both MCL 600.2169 and MRE 702, plaintiffs' counsel also argued that even if Dr. Kitain were struck as a standard of care expert, plaintiffs could establish the standard of care consistent with plaintiffs' theory of the case by an admission Dr. Markiewicz made during his deposition. Dr. Markiewicz had testified in his deposition:

*Q.* And is the standard of care to avoid touching the tympanic membrane with the Skeeter drill?

*A.* It is.

Despite this answer, Dr. Markiewicz testified that he did not touch plaintiff's eardrum with the Skeeter drill. Furthermore, later in his deposition, Dr. Markiewicz testified he misunderstood the standard of care question and that touching the eardrum with the drill is a recognized potential complication of the canaloplasty procedure. Dr. Markiewicz then testified:

*Q.* Well, let me ask you it this way, then. Do you believe that contact of the tympanic membrane and malleus with the high-speed drill during canaloplasty would cause severe profound sensorineural hearing loss?

*A.* If there were visible damage to the malleus, I suppose it's a possibility. It's a recognized potential complication of this type of surgery. I know that I did

not touch the tympanic membrane or the malleus or any of the ossicles with the high-speed drill.

*****

*Q.* So it's a goal of the surgery to attempt to avoid involving the tympanic membrane in the procedure?

*A.* Yes.

*Q.* Okay, not necessarily a standard of care violation if it becomes involved, would that be fair to say?

*A.* Correct. It essentially boils down to why make it more complicated for yourself than it has to be.

*Q.* And in this case did you achieve your goal of not involving the tympanic membrane or the malleus in the surgical field or in this operation?

*A.* I did.

On further examination by plaintiffs' counsel, Dr. Markiewicz continued:

*Q.* Doctor, putting the drill on the tympanic membrane would be a violation of the standard of care, correct?

*A.* No.

*Q.* We went through this earlier, and you had said yes, I believe, to that or a similar question. You're changing your answer now?

*A.* I guess I misunderstood you. It would be a potential known complication.

*Q.* Okay. There are a number of techniques that a skilled surgeon can use to avoid putting a drill through the tympanic membrane?

*A.* Yes, as I described earlier.

*****

*Q.* And if you turn on the drill as it's against the tympanic membrane, that would be a violation of the standard of care?

*****

*A.* In the process of drilling, it's possible that it could happen. I can't say that it's a violation of the standard of care.

-4-

After hearing arguments of counsel, the trial court ruled from the bench that Dr. Kitain was not qualified to offer standard of care testimony under MCL 2169(2) and (3) and MRE 702. In pertinent part, the trial court reasoned:

> We have an individual here who has never done this procedure. He only observed it maybe six times, almost 30 years ago. He has not spoke[n] on it. He's not written any articles on it. He's never used this drill or the type of drill that was used in this surgery. I cannot—I think generally in these facts and circumstances, and normally, the issue would go to the weight of the—of the testimony and not admissibility, but the Court finds that this lack of experience in these areas is so significant, as—as—looking at its role as a gate keeper, I don't believe this individual is qualified to give an opinion with regard to standard of care in this area.

The trial court also rejected plaintiffs' argument that they could prove their case without a standard of care expert. Additionally, the trial court denied plaintiffs' request to add a substitute standard of care expert, noting that trial was fast approaching and that discovery had closed. Therefore, the trial court granted defendants' motion. The trial court's order striking plaintiffs sole standard of care expert, Dr. Donald Kitain, "for the reasons stated on the record," and dismissing plaintiffs' complaint with prejudice, entered on May 26, 2015. Plaintiffs now appeal by right.

## II. STRIKING PLAINTIFFS' STANDARD OF CARE EXPERT

### A. STANDARD OF REVIEW

This Court reviews for an abuse of discretion a trial court's rulings regarding the qualifications of an expert and admissibility of an expert's testimony. *Woodard v Custer*, 476 Mich 545, 557; 719 NW2d 842 (2006). "An abuse of discretion occurs when the decision results in an outcome falling outside the principled range of outcomes." *Id*. This standard recognizes that there may be more than one correct outcome, i.e., there may be more than one reasonable and principled outcome. *Gonzalez v St John Hosp & Med Ctr (On Reconsideration)*, 275 Mich App 290, 294; 739 NW2d 392 (2007). "When the trial court selects one of these principled outcomes, it has not abused its discretion, and the reviewing court should defer to the trial court's judgment." *Id*. The proponent of evidence has the burden to establish its admissibility. *Edry v Adelman*, 486 Mich 634, 639; 786 NW2d 567 (2010).

"We review de novo questions of law underlying evidentiary rulings, including the interpretation of statutes and court rules." *Elher v Misra*, ___ Mich ___; ___ NW2d ___ (Docket No. 150824, decided 02/08/2016), slip op at 9.

### B. DISCUSSION

In this case, the record supports the trial court's reasonable and principled determination that Dr. Kitain lacked sufficient "knowledge, skill, experience, training, or education," MRE 702, with respect to performing the canaloplasty procedure to render reliable his opinion regarding the standard of care. See MCL 600.2955 ("a scientific opinion rendered by an otherwise qualified expert is not admissible unless the court determines that the opinion is

-5-

reliable"); MCL 600.2169(2). Consequently, the trial court did not abuse its discretion striking Dr. Kitain as plaintiffs' sole standard of care expert. *Gonzalez*, 275 Mich App at 294.

In a medical malpractice case, MRE 702, and MCL 600.2169 and MCL 600.2955, govern the qualifications of and the admissibility of expert opinion testimony. *Clerc v Chippewa Co War Memorial Hosp*, 477 Mich 1067; 729 NW2d 221 (2007); *Gonzalez*, 275 Mich App at 304-305. Plaintiffs argue that because Dr. Kitain and Dr. Markiewicz are both board certified in otorhinolaryngology, the "match" requirements of MCL 600.2169(1) are satisfied and the only issue is whether Dr. Kitain satisfies MRE 702. But, "even when a proffered expert meets the criteria contained in § 2169(1), the expert is subject to further scrutiny under § 2169(2), § 2169(3), § 2955, and MRE 702." *Woodard*, 476 Mich at 574. In rendering its ruling, the trial court specifically mentioned MCL 600.2169(2) and (3), as well as adopting the arguments of defendants in support of the motion. Plaintiffs do not discuss in their brief on appeal these other statutory provisions regarding the admissibility of expert testimony in a medical malpractice action. The failure to brief these related bases for the trial court's decision results in abandonment of any claim of error with respect to these other grounds for the trial court's decision. See *Mate v Wolverine Mut Ins Co*, 233 Mich App 14, 16; 592 NW2d 379 (1998), citing *Mitcham v Detroit*, 355 Mich 182, 203, 94 NW2d 388 (1959).

MCL 600.2955(1) provides in pertinent part (emphasis added):

In an action for the death of a person or for injury to a person or property, a scientific opinion rendered by an otherwise qualified expert *is not admissible unless the court determines that the opinion is reliable* and will assist the trier of fact. In making that determination, the court *shall examine the opinion* and the *basis for the opinion*, which basis includes the facts, technique, methodology, and reasoning relied on by the expert, and *shall* consider all of the following factors:

\* \* \* \* \*

(f) *Whether the basis for the opinion is reliable* and whether experts in that field would rely on the same basis to reach the type of opinion being proffered.

"The legislature enacted § 2955(1) in an apparent effort to codify the United States Supreme Court's holding in *Daubert v Merrell Dow Pharmaceuticals, Inc*, 509 US 579; 113 S Ct 2786; 125 L Ed 2d 469 (1993)." *Greathouse v Rhodes*, 242 Mich App 221, 238; 618 NW2d 106 (2000), rev'd on other grounds 465 Mich 885 (2001). "The plain language of the statute establishes the Legislature's intent to assign the trial court the role of determining, pursuant to the *Daubert* criteria, whether proposed scientific opinion is sufficiently reliable for jury consideration." *Id*. In fulfilling this gatekeeper role, "the court 'shall' consider all of the factors listed in MCL 600.2955(1)." *Clerc*, 477 Mich 1067. Furthermore, "[i]n an action alleging medical malpractice, the provisions of [§ 2955] are in addition to, and do not otherwise affect, the criteria for expert testimony provided in section 2169." MCL 600.2955(3).

In this case, defendants argued, and the trial court agreed, that Dr. Kitain was not qualified to render expert testimony regarding the standard of care under the criteria of MCL 600.2169(2) and (3). Those provisions state:

(2) In determining the qualifications of an expert witness in an action alleging medical malpractice, the court *shall*, at a minimum, evaluate all of the following:

(a) The *educational and professional training of the expert witness*.

(b) The *area of specialization of the expert witness*.

(c) The length of time the expert witness has been engaged in the active clinical practice or instruction of the health profession or the specialty.

(d) The relevancy of the expert witness's testimony.

(3) This section does not limit the power of the trial court to disqualify an expert witness on grounds other than the qualifications set forth in this section. [MCL 600.2169(2) and (3); Emphasis added.]

"[W]hen dealing with a proposed standard of care witness, the general provisions of § 2169(2) must be considered after a standard-of-care witness is qualified under the specific provisions of § 2169(1)." *Halloran v Bhan*, 470 Mich 572, 578 n 6; 683 NW2d 124 (2004). Consequently, the trial court properly considered Dr. Kitain's lack the education, professional training, and experience when deciding that Dr. Kitain could not reliably testify regarding the standard of care requisite for performing a canaloplasty. The record shows that Dr. Kitain had never performed a canaloplasty; his last educational experience regarding the procedure was over 27 years earlier during his residency when he observed the procedure being performed, and Dr. Kitain also admitted he did not have the requisite training or experience to perform a canaloplasty.

Plaintiffs argue that the trial court erred and abused its discretion ruling that Dr. Kitain was not qualified as standard of care expert under MRE 702. Under MRE 702, as with MCL 600.2955(1), a trial court in a medical malpractice case must exercise its gatekeeper role to ensure that proffered expert opinion testimony is sufficiently reliable to be admitted into evidence. *Gilbert v DaimlerChrysler Corp*, 470 Mich 749, 780; 685 NW2d 391 (2004). MRE 702 incorporates the standards of reliability adopted by the United States Supreme Court in *Daubert* that requires trial courts ensure that all scientific testimony or evidence admitted is not only relevant, but reliable. *Edry*, 486 Mich at 639-640. The focus of inquiry is whether the expert has a sound foundation from which to rationally render opinion testimony. *Chapin v A & L Parts, Inc*, 274 Mich App 122, 139; 732 NWd2 578 (01/30/2007); see also *Dybata v Kistler*, 140 Mich App 65, 70; 362 NW2d 891 (1985) (doctor in medical malpractice case "did not have an adequate basis to support the claim that he knew the standard of care for a general practitioner"). Thus, MRE 702, like its federal counterpart, FRE 702, "assign[s] to the trial judge the task of ensuring that an expert's testimony both *rests on a reliable foundation* and is relevant to the task at hand." *Daubert*, 509 US at 597 (emphasis added).

Pertinent to this case, MRE 702 requires that to be recognized an expert, a witness must be qualified to render reliable opinion testimony "by knowledge, skill, experience, training, or education." See *Craig v Oakwood Hosp*, 471 Mich 67, 78; 684 NW2d 296 (2004); *Gonzalez*, *supra* at 305. Plaintiffs argue that Dr. Kitain satisfies the criteria of MRE 702 because he is familiar with the anatomy of the ear and professes knowledge of the standard of care regarding canaloplasty, citing *Bahr v Harper-Grace Hospitals*, 448 Mich 135, 141; 528 NW2d 170 (1995)

("A party offering the testimony of an expert witness must demonstrate the witness' knowledge of the applicable standard of care."). But Dr. Kitain's self-professed knowledge of the applicable standard of care, without providing a sound foundation for this knowledge, is insufficient to render opinion testimony reliable. See *Daubert*, 509 US at 597; *Edry*, 486 Mich at 639-640; *Chapin*, 274 Mich App at 139; *Dybata*, 140 Mich App at 70.

"Under MRE 702, it is generally not sufficient to simply point to an expert's experience and background to argue that the expert's opinion is reliable and, therefore, admissible." *Edry*, 486 Mich at 642. Similarly, a claim of knowledge regarding the applicable standard of care, without establishing a sound foundation for the knowledge so that opinion testimony may be deemed reliable, is insufficient. Otherwise, opinion testimony is mere speculation or the particular beliefs of the expert. "It is axiomatic that an expert, no matter how good his credentials, is not permitted to speculate." *Id*. at n 6 (citation, brackets, and quotation marks omitted). "[T]he word 'knowledge' connotes more than subjective belief or unsupported speculation." *Daubert*, 509 US at 600 (opining on FRE 702). The standard of care represents "generally accepted standards," MCL 600.2955(1)(c), within the "relevant expert community," MCL 600.2955(1)(e), and not the personal opinion of the particular expert. See *Elher*, 498 Mich at ___, slip op at 16 (holding that the trial court did not abuse its discretion finding the plaintiff's expert unqualified where the expert's "opinion was based on his own beliefs [and] there was no evidence that his opinion was generally accepted within the relevant expert community").

Again, Dr. Kitain's own testimony shows that has never performed a canaloplasty; his last educational experience regarding the procedure was observing it being performed over 27 years earlier, and he admitted that he does not have the requisite training or experience to perform a canaloplasty. Further, plaintiffs did not satisfy their burden of showing that Dr. Kitain has an adequate foundation for his professed knowledge regarding the standard of care pertaining to the performance of a canaloplasty to render his proposed opinion testimony reliable and admissible. MRE 702; *Edry*, 486 Mich at 639-640; *Dybata*, 140 Mich App at 70. Under these circumstances, the trial court's ruling that Dr. Kitain was not qualified to provide reliable expert opinion testimony regarding the standard of care was within the range of reasonable and principled outcomes; therefore, it was not an abuse of discretion. *Gonzalez*, 275 Mich App at 294.

Finally, plaintiffs' reliance on *Albro v Drayer*, 303 Mich App 758, 762-763; 846 NW2d 70 (2014), is misplaced. The *Albro* Court held that three defense experts were qualified to testify regarding the standard of care even though they had not actually performed the Chrisman-Snook ankle surgical procedure at issue. The trial court properly distinguished *Albro* from the facts of the instant case. The *Albro* Court rejected the plaintiff's argument that the trial court should have disqualified the defendant's experts, noting that "all of [the] defendant's experts performed ankle reconstructions regularly and were experts in doing so" and "though not performing it, *all of them were familiar with the Chrisman-Snook procedure*. All of them had, in addition, either authored at least one article or textbook or lectured on ankle reconstruction and had discussed the Chrisman-Snook procedure in the process." *Id*. (emphasis in original). But in this case, Dr. Kitain did not simply use a different approach in performing a canaloplasty, he testified that he had *never* performed a canaloplasty procedure, and he had not performed surgery on the temporal bone, the source of the bony growths defendant in this case surgically removed. Additionally, Dr. Kitain had not performed any ear surgery involving a rotating drill. Dr. Kitain

also admitted that he lacked the training and experience necessary to perform canaloplasty. Unlike in *Albro*, there is no evidence that Dr. Kitain authored any books or articles or presented any lectures or otherwise had any foundation by way of "skill, experience, training, or education," MRE 702, to support his claim of "knowledge." See *Daubert*, 509 US at 597; *Edry*, 486 Mich at 639-640; *Dybata*, 140 Mich App at 70. Consequently, the trial court did not abuse its discretion by ruling that Dr. Kitain was not qualified to testify as an expert regarding the standard of care applicable to the canaloplasty Dr. Markiewicz performed. It follows that Dr. Kitain is also unqualified to testify regarding Dr. Markiewicz's qualifications to perform canaloplasty.

## III. DISMISSING PLAINTIFFS' COMPLAINT

### A. STANDARD OF REVIEW

This Court reviews de novo a trial court's decision on a motion for summary disposition. *Gonzalez*, 275 Mich App at 294. When considering a motion under MCR 2.116(C)(10), the trial court and this Court must view the submitted documentary evidence in the light most favorable to the party opposing the motion. *Maiden v Rozwood*, 461 Mich 109, 120; 597 NW2d 817 (1999). A trial court properly grants the motion when the submitted evidence fails to establish any genuine issue of material fact and the moving party is entitled to judgment as a matter of law. *West v Gen Motors Corp*, 469 Mich 177, 183; 665 NW2d 468 (2003). "A genuine issue of material fact exists when the record, giving the benefit of reasonable doubt to the opposing party, leaves open an issue upon which reasonable minds might differ." *Id*.

In a medical malpractice case, expert testimony is necessary to establish the applicable standard of care and the breach of that standard. *Gonzalez*, 275 Mich App at 294. The trial court properly grants summary disposition to the defendants when a plaintiff's sole standard of care expert is determined unqualified to testify to the standard of care and its alleged breach. *Elher*, ___ Mich at ___, slip op at 2, 17; *Edry*, 486 Mich at 636, 644.

### B. DISCUSSION

Because the trial court did not abuse its discretion by striking Dr. Kitain as plaintiffs' standard of care expert, the court properly dismissed plaintiffs' complaint. *Id*. In a medical malpractice case, the plaintiff bears the burden of proving: (1) the applicable standard of care, (2) breach of that standard by the defendant, (3) an injury, and (4) proximate causation between the alleged breach and the injury. *Wischmeyer v Schanz*, 449 Mich 469, 484; 536 NW2d 760 (1995). Without a standard of care expert, plaintiffs were left without evidence to raise a genuine issue of material fact regarding two necessary elements of malpractice: (1) the applicable standard of care and (2) that Dr. Markiewicz breached that standard of care. *Gonzalez*, 275 Mich App at 294. Plaintiffs' argument that they should be permitted to rely on a single deposition answer of Dr. Markiewicz that was withdrawn is unpersuasive.

First, all of the cases that plaintiffs cite in support of their proposition that they can proceed to trial without a qualified standard of care expert on the basis that they can prove the applicable standard of care through cross-examination of adverse witnesses were all decided before the adoption of 1993 PA 78, the 1993 tort reform legislation. In general, a medical

malpractice plaintiff cannot proceed without a valid affidavit of merit. See MCL 600.2912d; *Scarsella v Pollak*, 461 Mich 547; 607 NW2d 711 (2000); *Hoffman v Barrett (On Remand)*, 295 Mich App 649; 816 NW2d 455 (2012). Plaintiffs mainly rely on *Rice v Jaskolski*, 412 Mich 206; 313 NW2d 893 (1981), which addressed whether the trial court erred by granting a defendant's motion for directed verdict. Two other cases that plaintiffs cite decided that the plaintiffs could proceed to trial without the naming of a standard of care expert witness. *Niemi v Upper Peninsula Orthopedic Associates, Ltd*, 173 Mich App 326; 433 NW2d 363 (1988) (ruling on a defendants cross-appeal after a no cause of action verdict); *Porter Henry Ford Hosp*, 181 Mich App 706; 450 NW2d 37 (1989) (ruling on a defense motion for summary disposition under MCR 2.116(C)(8) because the plaintiff had not named an expert witness). The last case plaintiffs cite, *Carlton v St John Hosp*, 182 Mich App 166; 451 NW2d 543 (1989), is the only one addressing a motion for summary disposition under MCR 2.116(C)(10). The trial court in *Carlton* ruled that the plaintiff's expert was not qualified to give standard of care testimony against the defendant doctors. *Carlton*, 182 Mich App at 171. The plaintiff on appeal agued, as plaintiffs do here, that even if her expert could not testify as to the standard of care, the defendants themselves could testify as to the standard of care. The *Carlton* Court rejected this argument, opining:

> In a malpractice action, expert testimony may be elicited from a defendant physician called for cross-examination under the Michigan adverse party statute. *Rice v Jaskolski*, 412 Mich 206, 212; 313 NW2d 893 (1981).

> Plaintiff failed to produce proofs in response to the motion which would show a genuine issue of material fact as to the standard of care for surgeons and the breach of that standard of care. Plaintiff's claim that the necessary testimony "could be obtained . . . at trial" is, if not too little, too late. [*Carlton*, 182 Mich App at 172-173.]

In sum, all of the cases that plaintiffs cite are either superseded by statute, not directly on point, or do not support their claim that they can proceed to trial without a standard of care expert. *Spires v Bergman*, 276 Mich App 432, 443-444; 741 NW2d 523 (2007).

Plaintiffs attempt to rely on a single affirmative response of Dr. Markiewicz to a question of whether the standard of care includes avoiding "touching the tympanic membrane with the Skeeter drill?" But Dr. Markiewicz, later in the same deposition, testified that he misunderstood the earlier question and also clearly testified that the Skeeter drill's contacting the tympanic membrane is a recognized complication of performing a canaloplasty procedure, not a breach of the standard of care. Plaintiffs' argue that they can cherry-pick Dr. Markiewicz's deposition because on motion for summary disposition, the facts must be viewed in the light most favorable to them. See *Maiden*, 461 Mich at 120. Plaintiffs accurately recite the law, but the deposition testimony of a witness must still be read fairly and in context . See *Mate*, 233 Mich App at 21 (a witness's deposition testimony read in context did not raise a genuine issue of material fact); *Young v Oakland Gen Hosp*, 175 Mich App 132, 138-139; 437 NW2d 321 (1989) (the deposition testimony of a witness read in context failed to raise a genuine issue of material fact). Dr. Markiewicz's deposition testimony, read in context, clearly was that (1) he did not touch plaintiff's eardrum with the drill, and (2) although he takes precautions against doing so, if he did touch the eardrum, his doing so would not have been a violation of the standard of care; it would simply have been a known risk and complication.

-10-

The general rule regarding admissions in a deposition is that they are binding absent an explanation. *Stefan v White*, 76 Mich App 654, 659-660; 257 NW2d 206 (1977). This Court in *Dykes v William Beaumont Hosp*, 246 Mich App 471, 480; 633 NW2d 440 (2001), quoting *Gamet v Jenks*, 38 Mich App 719; 197 NW2d 160 (1972), stated the rule: " '[W]hen a party makes statements of fact in a 'clear, intelligent, unequivocal' manner, they should be considered as conclusively binding against him *in the absence of any explanation or modification, or of a showing of mistake or improvidence*.' " (Emphasis added). In this case, to the extent Dr. Markiewicz's initial singular response was clear and unequivocal, we cannot overlook, nor did the trial court, that Dr. Markiewicz in the same deposition explained, modified, and asserted that his first response was a mistake as he did not perceive the question accurately. Under these circumstances, we must agree that Dr. Markiewicz's initial response does not bind him.

In sum, the trial court did not abuse its discretion by ruling that Dr. Kitain lacked the necessary "knowledge, skill, experience, training, or education," MRE 702, to testify as an expert regarding the standard of care applicable to the canaloplasty, *Gonzalez*, 275 Mich App at 294. The trial court properly granted summary disposition to the defendants because plaintiff's sole standard of care expert was unqualified to testify to the standard of care and its alleged breach. *Elher*, ___ Mich at ___, slip op at 2, 17; *Edry*, 486 Mich at 636, 644. Plaintiffs may not proceed to trial on the single statement of Dr. Markiewicz that was withdrawn and modified by his later testimony. *Dykes*, 246 Mich App at 480; *Young*, 175 Mich App at 138-139.

## IV. MOTION TO EXTEND DISCOVERY AND ADD AN EXPERT WITNESS

### A. STANDARD OF REVIEW

The trial court's decision regarding discovery is reviewed for an abuse of discretion, as is its decision to permit the addition of a new expert witness. *Szpak v Inyang*, 290 Mich App 711, 713; 803 NW2d 904 (2010); *Tisbury v Armstrong*, 194 Mich App 19, 20; 486 NW2d 51 (1992). A trial court abuses its discretion when its decision is outside the range of reasonable and principled outcomes. *Woodard*, 476 Mich at 557.

### B. DISCUSSION

The trial court did not abuse its discretion denying plaintiffs' counsel's oral motion to extend discovery so that they could locate and add a new standard of care expert. *Woodard*, 476 Mich at 557; *Tisbury*, 194 Mich App at 20. Defendants' motion to strike Dr. Kitain was timely brought two months before trial. See *Greathouse v Rhodes*, 465 Mich 885; 636 NW2d 138 (2001). While defendants could have brought the motion after Dr. Kitain's deposition was taken and they learned of his infirmities as an expert with respect the canaloplasty procedure, so too was plaintiffs' counsel on notice of the same problems with respect to Dr. Kitain's qualifications.

The trial court denied the motion, reasoning as follows:

> This case has been going on for over two years. I see no good cause to reopen this. The plaintiffs chose this expert. They knew what his qualifications were. They should have. His deposition was taken long ago. You know, they—they could have added somebody back when discovery was open. It's been

closed. The case is set for June l5th for trial. There's no basis for good cause to reopen discovery, and allow a new expert.

In essence, the trial court found that good cause did not exist to grant the motion for several reasons. First, the case had been pending for some time, over two years, and the trial date was close. Second, plaintiffs chose the expert and had an opportunity to add other witnesses earlier in the case. In addition, plaintiffs' counsel had been aware of the problems regarding Dr. Kitain's qualifications at least from the point when his deposition was taken six months before defendants' motion to strike. Denying a late motion to add a witness "is proper where the movant fails to provide an adequate explanation and show that diligent efforts were made to secure the presence of the witness." *Tisbury*, 194 Mich App at 20.

The reasons the trial court gave for denying the motion were reasonable and principled. The abuse of discretion standard recognizes that there may be more than one correct outcome, i.e., there may be more than one reasonable and principled outcome. *Gonzalez*, 275 Mich App at 294. "When the trial court selects one of these principled outcomes, it has not abused its discretion, and the reviewing court should defer to the trial court's judgment." *Id*. We conclude that the trial court's decision was within the range of reasonable and principled outcomes. *Woodard*, 476 Mich at 557, so we are constrained to affirm it.

We affirm. As the prevailing party, defendants may tax costs under MCR 7.219.

/s/ Michael J. Riordan
/s/ Henry William Saad
/s/ Jane E. Markey